**Lissia Dianne WILLEFORD a/k/a Lissia D. Willeford, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–116–CR.**

Court of Appeals of Texas, Fort Worth.

April 18, 2002.

Publication Ordered May 9, 2002.

J.R. Molina, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney; Charles Mallin, Assistant Criminal District Attorney and Chief of the Appellate Section; C. James Gibson, Phelesa Guy, and Charles Brandenberg, Assistant Criminal District Attorneys, Fort Worth, for appellee.

PANEL A: HOLMAN and WALKER, JJ.; and DAVID L. RICHARDS, J. (Sitting by Assignment).

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Lissia Dianne Willeford a/k/a Lissia D. Willeford appeals her conviction, twenty-eight-year sentence, and $5000 fine for possession of methamphetamine with intent to deliver, and her conviction, two-year sentence, and $1900 fine for possession of cocaine. Appellant complains that the trial court erroneously instructed the jury on probable cause; that there was no "probable cause" to support the search and seizure of the evidence; that absent the evidence obtained without probable cause, the evidence is legally and factually insufficient to support her conviction; and that she was denied due process of law under the state and federal constitutions because she was convicted of two offenses under one indictment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Undercover narcotics officers Kevin Brown and Rick Yumane went to a motel following a tip that drug activity was occurring in room 313 of the Crossland Economy Suites Motel in Fort Worth. The officers learned from the motel manager that the room was registered to Tim and Lisa Russell (Lissia also goes by the name "Lisa"). Officer Brown, who was in plain clothes, knocked on the door of room 313, in an attempt to buy drugs from the occupants of the room while Officer Yumane waited downstairs. Appellant briefly opened the door, looked at Brown, and closed the door without saying anything.

A few minutes later, as the officers tried to decide what to do, Appellant and a man left the room and went downstairs. Appellant got into a car, and the man went in another direction. The officers approached Appellant's car and motioned to her. Appellant rolled down her window and, after identifying himself as a narcotics officer, Brown asked to talk to her. Appellant got out of the car and, after Brown asked if she would consent to a search of her purse and the car, Appellant pulled a bag of marijuana from her purse and threw it on the trunk of the car, telling the officer that the marijuana was all he would find. After receiving Appellant's consent, the officers searched her purse and car, but did not find anything else. Appellant admitted, however, there was "speed" in her motel room, which Officer Brown testified is the street term for methamphetamine or amphetamine, and signed a consent form allowing the officers to search the room.

Appellant opened the door to the room with a key from her key ring and showed the officers two lock boxes on the floor. Although she denied ownership of one of the boxes, two keys on her key ring unlocked each of the locks on the boxes. The box Appellant claimed was not hers contained methamphetamine. The officers also found several items including cocaine and marijuana on the dresser, scales, a syringe with methamphetamine, a glass smoking pipe, baggies, and $1900 in cash in Appellant's wallet in her purse.

### PROBABLE CAUSE

#### The Jury Instruction

In point 1–A, Appellant complains that the trial court gave an erroneous jury instruction on probable cause. The State asserts that Appellant invited error in the jury charge by requesting the erroneous instruction and by objecting when the State moved to have the instruction taken out of the charge. Appellant complains the invited error rule does not apply because she requested an instruction that the

jury disregard all the evidence from her motel room if it found the officers did not have probable cause for the initial stop and detention, and the trial court, on its own, instead instructed the jury to disregard *only the evidence recovered in the search of her vehicle.*

■ The court of criminal appeals has applied invited error when the defendant "invites" the trial court to do something, the trial court does the act, and thereafter the defendant complains of the trial court's action. *Kelley v. State,* 823 S.W.2d 300, 302 (Tex.Crim.App.1992); *Capistran v. State,* 759 S.W.2d 121, 124 (Tex.Crim.App. 1982) (op. on reh'g). Under the doctrine of invited error, if a party requests or moves the court to make an erroneous ruling, and the court rules in accordance with the request or motion, the party responsible for the court's action cannot take advantage of the error on appeal. *Prystash v. State,* 3 S.W.3d 522, 531 (Tex.Crim. App.1999), *cert. denied,* 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000); *Capistran,* 759 S.W.2d at 124.

■ As the court of criminal appeals stated in *Prystash,* invited error does not involve a waiver of error previously committed, but rather the exclusion from an appellate court's consideration of those actions requested in the trial court by the complaining party. 3 S.W.3d at 531–32. Therefore, the doctrine of invited error is properly thought of, not as a species of waiver, but as estoppel. *Id.*

The invited error rule in jury charges is one of long standing. *See Murphy v. State,* 640 S.W.2d 297, 299–300 (Tex.Crim. App.1982) (appellate court held defendant was estopped from complaining about the legality of a search when he elected to

prevent any disputed fact issue from coming before jury); *Cadd v. State,* 587 S.W.2d 736, 741 (Tex.Crim.App.1979) (op. on reh'g) (appellate court held defendant in no position to complain about charge given because the defendant requested the charge); *Holmes v. State,* 140 Tex.Crim. 619, 146 S.W.2d 400, 403 (1940) (defendant objected to the wording of the charge, the wording was taken out, then defendant complained the wording was not in the charge, appellate court held defendant invited error and could not complain).

■ Here, the State objected to the paragraphs about which Appellant now complains, and the trial court stated, "Yeah, that was requested. And I went ahead and put it in earlier this morning. But after reviewing the testimony and my notes, I'm going to take that out." At which time Appellant's trial counsel objected to the court taking out the paragraphs:

We think that it should be in there from the evidence that there's a fact issue, and also that we don't feel like there was probable cause for the officer to keep asking to search and everything. We believe that the jury can find that there's no probable cause, and that that should be left up to them on that issue.

After arguments from both parties, the trial court stated, "I'll tell you what. I'll go ahead and give that charge," and Appellant's counsel thanked the court. Later, the State reurged its objection to the paragraphs in another context and Appellant again vehemently argued that the paragraphs on probable cause should be left in.[1] The trial court eventually agreed to leave in the probable cause instruction.

The record does not reflect that the trial court altered Appellant's requested proba-

1. We note that the trial court also instructed the jury on the law of consent and that it should wholly disregard the evidence seized from the motel room should it fail to find beyond a reasonable doubt that Appellant freely and voluntarily consented to the search.

ble cause jury instruction in any way. Even if the trial court did alter the instruction, however, the record nonetheless illustrates that Appellant's counsel, after reviewing the jury charge, adamantly opposed the State's motion to take the probable cause paragraphs out. The trial court was clearly willing to take out the probable cause language until Appellant objected and argued why it should be left in. Therefore, even if the charge Appellant requested was altered to instruct the jury to disregard evidence from her vehicle, rather than all of the evidence from the car and the motel room, Appellant still invited error by first requesting the instructions on probable cause and by insisting the trial court leave in the paragraphs after the State objected. Accordingly, we hold that the invited error doctrine applies and will not consider whether the trial court erroneously included the instruction about which Appellant now complains.

■ Moreover, even if the invited error rule does not apply, Appellant waived any error in the jury charge as to probable cause to search the motel room by failing to specifically request that a probable cause instruction on the motel room search be included in the charge. A defensive issue is not "law applicable to the case," for purposes of article 36.14 of the code of criminal procedure, absent a timely request or objection. *Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App.1998). Furthermore, we do not perform a harmless error analysis to review omission of a jury instruction on a defensive issue that was not properly preserved by a request or objection. Tex.R.App. P. 33.1; *Posey*, 966 S.W.2d at 61. This is because there is generally no "error" in the charge, for which a harmless error analysis is required, where the appellant fails to object to claimed errors of omission or commission in the charge. *Id.* Consequently, not only is Appellant estopped from complaining about the jury charge under the invited error doctrine, but Appellant has also waived her complaint. Point 1–A is overruled.

### The Stop and Detention

■ In point one, Appellant complains there was no probable cause for the initial stop and detention. An officer, however, merely needs reasonable suspicion, not probable cause, to stop and briefly detain a person suspected of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App.2000). Circumstances short of probable cause for an arrest may justify a temporary investigation or detention because investigation is a lesser intrusion on personal security than an arrest. *Livingston v. State*, 739 S.W.2d 311, 326 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). On this point, it appears Appellant has waived her complaint about the propriety of the initial stop and detention.

In *Cox v. State*, we held that the defendant waived the issue of whether the police had reasonable suspicion to justify an investigative stop where his motion to suppress the evidence did not complain about the stop itself, but merely alleged that the resulting arrest and search were illegal. 931 S.W.2d 349, 358 (Tex.App.-Fort Worth 1996) *pet. dism'd, improvidently granted*, 951 S.W.2d 5 (Tex.Crim.App.1997). Likewise, in *Smith v. State*, the Houston Fourteenth Court of Appeals recently held the defendant waived his complaint that the officer lacked reasonable suspicion for a stop and detention where the defendant's attorney asked the trial court to forestall ruling on his motion to suppress so that he could research a recent Supreme Court opinion, but subsequently failed to secure a

ruling on his motion to suppress or to reassert his objection to the evidence at trial. 58 S.W.3d 784, 787 (Tex.App.-Houston [14th Dist.] 2001, no pet.). It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App.1990); *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim.App.1986).

Here, Appellant not only failed to file a motion to suppress the evidence obtained as a result of the allegedly unlawful stop and detention, but also failed to object to the admission of the evidence at trial. Therefore, we conclude that Appellant waived any complaint about the legality of the initial stop and detention. *See* TEX. R.APP. P. 33.1. Because we conclude that Appellant invited error in the jury charge and is therefore estopped from now complaining, and waived any objection to the initial stop and detention by failing to file a motion to suppress or object at trial, we overrule Appellant's first point.

## LEGAL AND FACTUAL SUFFICIENCY

In points two and three, Appellant complains that, because the evidence was obtained through an unlawful stop and detention, it should be disregarded, rendering the remaining evidence legally and factually insufficient to sustain her conviction. Because we hold that Appellant waived her right to contest the validity of the initial stop and detention by failing to object at trial, we will not disregard the evidence obtained as a result of the stop and detention. Appellant does not complain about the legal or factual sufficiency of the evidence except in the limited context that the evidence was insufficient *if* we disregard the evidence obtained from the stop and detention. Moreover, there is legally and factually sufficient evidence to support the convictions. *Cardenas v. State*, 30

S.W.3d 384, 389–90 (Tex.Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996). We overrule points two and three.

## DUE PROCESS

 In her fourth point, Appellant argues her two convictions are invalid because "of the rule that only one conviction can be had where a single indictment is tried." Article 21.24(a) of the code of criminal procedure provides, "Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode." TEX.CODE CRIM. PROC. ANN. art. 21.24(a) (Vernon 1989). The penal code defines "criminal episode" as:

> [T]he commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
>
> (2) the offenses are the repeated commission of the same or similar offenses.

TEX. PENAL CODE ANN. § 3.01 (Vernon 1994). Thus, reading the current versions of article 21.24(a) of the code of criminal procedure and section 3.01 of the penal code together, the State is authorized to join two or more offenses in a single indictment if the offenses are part of the same transaction or if the offenses are part of a common scheme or plan. *Harris v. State*, 34 S.W.3d 609, 614 (Tex.App.-Waco 2000, pet. ref'd); *Thacker v. State*, 999 S.W.2d 56, 62 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). Furthermore, article 37.07 of the code of criminal procedure provides that "[p]unishment shall be assessed on

each count on which a finding of guilty has been returned." Tex.Code Crim. Proc. Ann. art. 37.07, § 2(c) (Vernon 1981).

Appellant relies upon cases that held the State lacked authority to obtain multiple convictions from a single indictment and any conviction in excess of one per indictment was void. *See, e.g., Ex parte Drake,* 883 S.W.2d 213, 214 (Tex.Crim.App.1994); *Goff v. State,* 727 S.W.2d 603, 605 (Tex. App.-Texarkana 1987), *rev'd,* 777 S.W.2d 418 (Tex.Crim.App.1989); *Ex parte Ellison,* 699 S.W.2d 218, 219 (Tex.Crim.App. 1985). This line of cases, however, involved the prior version of section 3.01 of the penal code, which defined "criminal episode" as "the repeated commission of any one offense defined in Title 7 of this code (Offenses Against *Property* )." Act of May 24, 1973, 63d Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 891, (emphasis added), *amended by* Act of May 22, 1987, 70th Leg., R.S., ch. 387, § 1, sec. 3.01, 1987 Tex. Gen. Laws 1900, 1900 (current version at Tex. Penal Code Ann. § 3.01 (Vernon 1994)). The statutory underpinnings of those cases, however, have been amended and it is currently permissible for the State to allege multiple nonproperty offenses in the same indictment and obtain convictions on each offense. *Harris,* 34 S.W.3d at 614; *Sanchez v. State,* 928

S.W.2d 255, 257–58 (Tex.App.-Houston [14th Dist.] 1996, no pet.).

In *Wright v. State,* the Eastland Court of Appeals held that where the defendant was charged with intoxication manslaughter and with intentionally or knowingly causing injury to a child, two convictions under a single indictment were permissible under article 21.24 and section 3.01, even though both counts arose from a single traffic accident causing the death of a single victim. 866 S.W.2d 747, 751 (Tex.App.-Eastland 1993, pet. ref'd). Accordingly, we also hold that possession of methamphetamine with intent to deliver and possession of cocaine are two separate offenses that may properly be alleged in a single indictment under article 21.24 and section 3.01. Therefore, we overrule Appellant's fourth point.

## CONCLUSION

Having overruled all of Appellant's points, we affirm the trial court's judgment.