COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| FRANCISCO GARCIA, | | No. 08-09-00277-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | Criminal District Court No. 1 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC #20090D02260) |
| | § | |

**O P I N I O N**

Francisco Garcia appeals his conviction for the offense of delivery of cocaine in an amount equal to or more than 400 grams. A jury found Appellant guilty and assessed punishment at imprisonment for fifteen years in the Texas Department of Criminal Justice, Institutional Division. We affirm.

**FACTUAL SUMMARY**

On April 29, 2009, Detective Esteban Anchondo, an undercover officer with the El Paso Police Department Narcotics Division, spoke with an unknown person about buying two kilos of cocaine, one to be delivered and paid in full while paying half the price for the other to be delivered at a later date. After the initial conversation, Anchondo drove his unmarked police unit, a Chevy pickup truck, to the parking lot of the Hooters restaurant at Cielo Vista Mall in El Paso, Texas to conduct the undercover drug buy. Anchondo parked about 100 yards north of the restaurant facing west and remained alone inside his vehicle. Nearby, other members of the unit were assisting in surveillance and recording audio and video of the undercover operation. Appellant drove up next to Anchondo's pickup in a green Toyota Tacoma and parked. Anchondo motioned to Appellant that

the passenger door was unlocked and he got into the passenger seat, placing the jacket he was carrying on his lap.

Once in Anchondo's pickup, Appellant opened the jacket that laid on his lap and revealed a bundle, which Anchondo immediately recognized as a kilo of cocaine. Anchondo asked if he was supposed to give Appellant all of the money, $23,000 for one kilo plus $12,000 for the second kilo, but Appellant merely answered, "Uh-huh." After handing over the money Anchondo asked if he could see the cocaine, placed the bundle on the center console of his pickup, and proceeded to take out a small pocket knife with which he cut into the wrapping on the bundle to determine it was cocaine. As Anchondo cut into the wrapping he noticed a white powder over another layer of tape, which he thought unusual. Appellant explained that after the cocaine is packaged they put another layer of white powder that is similar to baby powder or talcum powder. After the exchange was complete, law enforcement officers announced themselves and Appellant was arrested.

Appellant is a Mexican national who was living in Ciudad Juarez, Chihuahua, Mexico at the time of his arrest. He shared a house, which included a small store, with his mother and sister. At trial, Appellant raised the affirmative defense of duress and explained that he had received threats to his life and the lives of his family members if he did not assist in getting drugs to the United States. He testified that between January 2009 and a approximately a week before he was arrested the following occurred: (1) he was approached to assist in trafficking drugs across the international border with the United States from Mexico and declined; (2) his family's home and store were shot at by a group of unknown men in a pickup truck; (3) he was contacted by an unknown male who told him, "You see, I had already told you, they don't play around;" (4) he was visited by a second group of unknown men who referenced the shooting of his home and store-front and informed him that, "They're going to call you on the phone, that's all;" (5) after succumbing to the "warnings,"

Appellant spoke on the phone and then met with an unknown man with a "hoarse voice" who threatened him with a gun if he did not comply with the requests to deliver drugs. Two days before he was arrested in this case, Appellant went to see the man with the hoarse voice. The man instructed Appellant to cross the border at the Zaragoza bridge and someone would be waiting for him to take him where he needed to go. Appellant added that in addition to being scared of the man with the "hoarse voice," he was scared because "there had already been a lot of people killed in Juarez."

During cross-examination, Appellant testified that at his meeting two days before his arrest the man did not have a gun and the man did not threaten Appellant or his family. He also testified that even on the day of his arrest, no one threatened Appellant or his family with imminent death or bodily harm should Appellant refuse to go through with the plan. Appellant revealed that he had not made any mention of the requests to transfer drugs, warning phone calls, warning visits, or threats to his family until approximately a month before trial.

The trial court's charge included an instruction on duress. The jury rejected Appellant's defense and found him guilty of delivery of cocaine as charged in the indictment.

## CHARGE ERROR

In his sole issue, Appellant complains that the second application paragraph of the jury charge, which included the affirmative defense of duress, was so confusing and misleading that the jury could not properly apply the law to the facts. The application paragraph authorized the jury to find the defendant not guilty:

> **If you find that the defendant did not unlawfully intentionally or knowingly deliver**, to-wit: actually transfer or a constructive transfer to Esteban Anchondo a controlled substance, namely cocaine, having an aggregate weight, including adulterants or dilutants, of 400 grams or more **or if you have a reasonable doubt thereof,** or if then you find by a preponderance of the evidence that at the time of the

conduct charged, the defendant engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another, you will find the defendant not guilty (VERDICT FORM A). [Emphasis added].

Specifically, Appellant contends that the charge should have included one or the other of the highlighted clauses, but not both. The State counters with the invited error doctrine. At the charge conference, the State asked that the latter phrase be stricken, while Appellant insisted that he was entitled to have it included.

In reviewing charge error, we generally must first determine whether error exists. *Druery v. State*, 225 S.W.3d 491, 504 (Tex.Crim.App. 2007). If we find error, we then determine whether the error caused sufficient harm to require reversal. *Id.* The degree of harm necessary for reversal depends upon whether the appellant preserved the error. *Id.* Since Appellant did not preserve error, the egregious harm standard would normally apply. *See id.* But it does not apply here because the error was invited. *Druery*, 225 S.W.3d at 505-06; *Prystash v. State*, 3 S.W.3d 522, 531 (Tex.Crim.App. 1999).

As a species of estoppel, the doctrine of invited error acts to exclude, as error, "those actions of the trial court actually sought by the party in that tribunal." *Prystash*, 3 S.W.3d at 531. The *Prystash* court found that the defendant was not permitted to complain that the trial court's deletion of a portion of the charge at the defendant's request was error. *Id.* at 532. "Just as the law of entrapment estops the State from making an offense of conduct that it induced, the law of invited error estops a party from making an appellate error of an action it induced." *Id.* at 531; *Willeford v. State*, 72 S.W.3d 820, 823 (Tex.App--Fort Worth 2002, pet. ref'd.)(the invited error rule prohibits a party from succeeding in having an alleged jury charge error reviewed by a higher court in hopes of reversal, where that party requested the jury charge and the charge was given or the party

affirmatively argued that the trial court include or exclude a portion of the charge).

Appellant also maintains that the charge is erroneous because it includes the affirmative defense of duress in the second application paragraph rather than in a separate paragraph. The meaning of a jury charge "should be taken from the whole charge, not just from a certain few instructions read in isolation." *Hernandez v. State*, 340 S.W.3d 55, 60 (Tex.App.--Houston [1st Dist.] 2011, no pet.), *quoting Plata v. State*, 926 S.W.2d 300, 302 (Tex.Crim.App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App. 1997). Jurors are not authorized to return a verdict except under those conditions given by the application paragraph of the charge. *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex.App.--Dallas 2007, pet. ref'd). A charge is adequate "if it either contains an application paragraph specifying all of the conditions to be met before a conviction under such theory is authorized, or contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs." *Id.*, *quoting Plata*, 926 S.W.2d at 304.

The San Antonio Court of Appeals addressed an analogous argument in *Wingo v. State*, 143 S.W.3d 178 (Tex.App.--San Antonio 2004), *aff'd*, 189 S.W.3d 270 (Tex.Crim.App. 2006). Wingo, who had been convicted of tampering with a governmental record, argued on appeal that the placement and positioning of his statutory defense precluded him from having the defense clearly presented to the jury. *Id.* at 190. The statutory defense and its application to the facts was included in paragraph VI of the charge, followed by the application paragraph regarding the offense in paragraph VII. *Id.* Citing *Plata*, Wingo asserted that the statutory defense was not logically arranged in relation to the application paragraph and that the structure of the charge diminished the relevance and importance of the statutory defense while amplifying the meaning of the conviction language

in the application paragraph. *Id*. The court of appeals rejected his argument. *Id.*

Like the defendant in *Wingo*, Appellant has not cited any authority for his argument that the affirmative defense of duress should have been included in a separate paragraph, nor are we persuaded that a separate paragraph is the only logical construction. The second application paragraph sets forth all of the conditions under which the jury would be required to find Appellant not guilty. We overrule the sole point and affirm the judgment of the trial court.

September 28, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)