

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00383-CR

WILLIAM THOMAS VAUGHN III                          APPELLANT

V.

THE STATE OF TEXAS                                       STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY
### TRIAL COURT NO. 1338521

----------

## MEMORANDUM OPINION[1]

----------

In two issues, Appellant William Thomas Vaughn III appeals from his conviction for driving while intoxicated, enhanced to a Class A misdemeanor by a previous conviction for the same offense. *See* Tex. Penal Code Ann. §§ 49.04(a), .09(a) (West Supp. 2016). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND FACTS

At approximately 2:30 a.m. on August 18, 2013, Vaughn was operating a Porsche SUV that rear-ended another vehicle in Tarrant County. Police officers responded to the scene and conducted a DWI investigation of all the drivers involved in the collision. As part of that investigation, Officer Kyle Davis of the Fort Worth Police Department (FWPD) approached Vaughn, after which he noticed that Vaughn smelled of alcohol, that his speech was slurred, and that his eyes were glazed. Officer Davis performed the horizontal gaze nystagmus, walk-and-turn, and one-leg-stand standardized field sobriety tests on Vaughn. Based upon his previous observations of Vaughn and Vaughn's failure of the field sobriety tests, Officer Davis concluded that Vaughn had lost the normal use of his mental and physical faculties and arrested him for driving while intoxicated. Vaughn was then transported back to the police station.

After arriving at the station, Vaughn was placed in an "intox room." Officer Davis and Officer Jennifer Russell, a certified intoxilyzer operator with the FWPD, were in the intox room with Vaughn. Officer Davis read Vaughn his statutory warnings, after which Officer Russell asked him whether he would consent to providing a specimen of his breath, and Vaughn consented. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2016). Officer Russell then asked Vaughn if he would consent to further field sobriety testing, and Vaughn consented to this as well. Officer Davis left the intox room, and Officer Russell began administering additional field sobriety tests to Vaughn. After those tests were

completed, Officer Russell read Vaughn his *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). Vaughn then asked Officer Russell, "What time was I booked in?" to which she replied "4:15ish [a.m.], 4:20 [a.m.]"[2] Vaughn asked, "What time is it now?" and Officer Russell replied, "4:25 [a.m.]" Officer Russell concluded the sobriety testing and then led Vaughn out of the intox room into the hallway where the intoxilyzer machines were located. She proceeded to collect two breath samples from Vaughn—the first at 4:33 a.m. and the second at 4:36 a.m. The two samples contained an alcohol concentration of 0.130 and 0.138, respectively, both of which exceeded the legal limit of 0.08. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011), § 49.04(a).

During trial, Vaughn objected to the admission of his breath test results on the basis that Officer Russell's testimony demonstrated that she was not in his presence to observe him for a fifteen-minute period prior to administering his breath test.[3] The trial court overruled Vaughn's objection and admitted the results of the breath test. At the charge conference, Vaughn requested the following instruction pursuant to Texas Code of Criminal Procedure article 38.23:

---

[2]Officer Russell testified that this was an estimation of the time Vaughn had "walked in the jail."

[3]Sarah Skiles, a senior forensic analyst with the Tarrant County Medical Examiner and technical supervisor for the Breath Alcohol Testing Program in Tarrant County, testified that the Texas Department of Public Safety (DPS) requires an intoxilyzer operator to observe a person for a fifteen-minute period prior to administering a breath test to that person.

You are further instructed that the Texas Department of Public Safety requires that a breath test operator be in the continuous presence of a subject prior to the administration of a breath test.

In considering these instructions, if you find from the evidence that Ms. Russell was not in the continuous presence of the Defendant prior to the administration of the breath test in this case[,] you will not consider such evidence for any purpose whatsoever.

*See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005). Over the State's objection, the trial court allowed this instruction. The jury convicted Vaughn of the offense charged, and after a punishment hearing, the trial court sentenced him to 191 days' confinement.

## II. DISCUSSION

### A. ADMISSIBILITY OF VAUGHN'S BREATH TEST

In his first issue, Vaughn argues that the trial court erred in admitting the results of his breath test because Officer Russell was not in his presence for a fifteen-minute period prior to administering his test. We first address the State's contention that Vaughn failed to preserve this complaint. *See* Tex. R. App. P. 33.1; *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (stating that an appellate court should not address the merits of an issue that has not been preserved).

### 1. Preservation

Vaughn conducted a voir dire examination of Skiles outside of the jury's presence that centered upon whether an intoxilyzer operator was required to be in the presence of a person for a minimum of fifteen minutes before administering

a breath test to that person. Skiles testified that the DPS mandated such an observation period and that if an intoxilyzer operator failed to comply with it, Tarrant County technical supervisors "will not support the test." Following this voir dire examination, the following exchange took place:

[DEFENSE COUNSEL]: Judge, I was very careful about the way I spoke to -- questioned Officer Russell. She on the video, in response to my client's question -- I asked for those last few minutes of that video to be published for a reason. She asked -- He asked her, "What time did I get booked in." And she said, "4:15ish, 4:20." And then I asked her, . . . "What time were you referring to," and she said, "When he got to the jail."

THE COURT: Right.

[DEFENSE COUNSEL]: And then . . . I said, "Did he then come in that room with you after that time," and she said, "Yes." So that leaves, at the very maximum, [thirteen] minutes . . . that she was in the presence of him. Not 15 minutes --

THE COURT: How could that be ten if she said 4:15, not saying what door he actually walked in and then it's 4:33 [when Officer Russell obtained Vaughn's first breath sample]. That's not ten. That's [eighteen].

[DEFENSE COUNSEL]: Right. But that's why I asked her that. When you said 4:15ish or 4:20, she was saying when he arrived at the jail, not when he arrived in her --

THE COURT: I just don't remember anything real definite, so I guess you're probably gonna need to -- I'm gonna allow the testimony. You can cross-examine her on that. And we're probably gonna need to call her back. And she's probably asleep. But I am going to allow it.

[DEFENSE COUNSEL]: Okay. We offer our objection at the time, Your Honor. Because I was very clear in my questioning of her. And it was 13 minutes.

5

THE COURT:  Well, the fact that she said "ish" does not really -- I don't think it's that definite.  But I didn't write down everything she said, so I don't really recall.

The trial court then brought in the jury, and the State began its direct examination of Skiles.  The State moved to admit the results of Vaughn's breath test, and Vaughn objected as follows:  "Your Honor, we just reoffer the same objection we made the previous time."  The trial court overruled this objection and admitted Vaughn's breath test results.

The State contends that Vaughn's objection during Skiles's voir dire examination did not state any legal basis forming a valid objection and that his appellate complaint does not comport with the objection he raised when the State moved to admit his breath test results.  *See* Tex. R. App. P. 33.1(a); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013).  We do not require a party to use hyper-technical or formalistic words or phrases in order to preserve a complaint for appeal.  *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).  Rather, we examine the record to determine whether a party's objection was sufficient to "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).  Moreover, a general or imprecise objection is sufficient to preserve error "[w]hen the correct ground for exclusion was obvious to the judge and opposing counsel." *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009).  Additionally, whether a

6

party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial, and in making that determination, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Pena*, 285 S.W.3d at 464.

Given the context in which it was made, we conclude that Vaughn's objection that "we just reoffer the same objection we made the previous time" was quite clearly a reference to Vaughn's voir dire examination of Skiles, which he conducted immediately before the State began its direct examination of her, and that the trial court understood as much when it overruled the objection and admitted the breath test results. Vaughn's voir dire examination of Skiles centered on the issue of whether the DPS required an intoxilyzer operator to observe a person for fifteen minutes prior to giving him a breath test and whether Officer Russell had complied with that requirement. That the State understood Vaughn's line of questioning is evident from the fact that it cross-examined Skiles on the same issues on voir dire. After Skiles's voir dire examination concluded, Vaughn clearly stated an objection to the breath test on the basis that Officer Russell did not observe Vaughn for the requisite fifteen-minute period. That is the objection he "reoffered" when the State moved to admit the breath test results, and that is precisely his issue on appeal. Thus, because the legal basis of Vaughn's objection is clear from the context of his objection, and because his appellate complaint comports with his trial objection, we conclude that Vaughn preserved this issue for our review.

7

## 2. Standard of Review

We turn now to Vaughn's argument that the trial court erred in admitting the results of his breath test. A trial court is afforded wide discretion in deciding whether to admit evidence, and we may not disturb such an evidentiary ruling absent an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). Under this standard, we will uphold a trial court's evidentiary ruling as long as it falls "within the zone of reasonable disagreement and was correct under any theory of law applicable to the case." *Winegarner*, 235 S.W.3d at 790; *see Theus*, 845 S.W.2d at 881.

## 3. Applicable Law

Evidence of a defendant's alcohol concentration, as shown by analysis of a specimen of his breath taken at the request of a peace officer, is admissible in a criminal trial for the offense of driving while intoxicated. Tex. Transp. Code Ann. § 724.064 (West 2011). Breath specimens collected under section 724.064 must be taken and analyzed under rules of the DPS. Tex. Transp. Code Ann. §§ 724.001(7), .016 (West 2011); *Atkinson v. State*, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002); *Adams v. State*, 67 S.W.3d 450, 452 (Tex. App.—Fort Worth 2002, pet. ref'd). At the time of Vaughn's breath test, the DPS had a rule requiring that an intoxilyzer operator "remain in the presence of the subject at least [fifteen] minutes before the test and [to] exercise reasonable care to ensure

8

that the subject does not place any substances in the mouth.  Direct observation

is not necessary to ensure the validity or accuracy of the test result."[4]  37 Tex.

Admin. Code § 19.4(c)(1) (2014) (Tex. Dep't of Pub. Safety, Approval of

Techniques, Methods, and Programs), *repealed by* 40 Tex. Reg. 129, 250–55

(2015).    Evidence that is obtained in violation of any provisions of the

Constitution or laws of the State of Texas is not admissible at trial.[5]  Tex. Code

Crim. Proc. Ann. art. 38.23(a).

---

[4]After Vaughn's breath test on August 18, 2013, and before his conviction on October 22, 2015, the DPS adopted new amendments and sections to its rules governing breath tests, effective January 12, 2015, in order to reorganize, update, and clarify them.  *See* 40 Tex. Reg. 129, 250–55 (2015).  As a result, the rule regarding the fifteen-minute observation period is now contained in section 19.3 of the Texas Administrative Code.  *See* 37 Tex. Admin. Code § 19.3 (2015) (Tex. Dep't of Pub. Safety, Techniques and Methods).  For purposes of this opinion, we analyze Vaughn's argument under former rule 19.4(c)(1), the applicable rule that was in force at the time of his breath test.  *See* 37 Tex. Admin. Code § 19.4(c)(1) (2014) (Tex. Dep't of Pub. Safety, Approval of Techniques, Methods, and Programs), *repealed by* 40 Tex. Reg. 129, 250–55 (2015).  *See Patel v. State*, No. 01-14-00575-CR, 2015 WL 5821439, at *1 n.1 (Tex. App.—Houston [1st Dist.] Sep. 29, 2015, pet. ref'd) (mem. op.).

[5]Generally, the failure to comply with an administrative agency's rules does not provide a basis for the exclusion of evidence under article 38.23.  *See Atkinson*, 923 S.W.2d at 23 n.1.  However, in the context of this case, the applicable statute itself expressly requires a breath sample to be taken in compliance with DPS rules.  *See* Tex. Transp. Code Ann. §§ 724.001(7), .016.  For that reason, in a driving while intoxicated case, the State's failure to collect a defendant's breath sample in compliance with DPS rules may necessitate either the exclusion of the analysis of that sample from evidence or an instruction under article 38.23.  *Atkinson*, 923 S.W.2d at 23 n.1; *Adams*, 67 S.W.3d 452–53.

## 4. Application

Vaughn points to Officer Russell's testimony, contending that it demonstrated that he did not arrive at the jail "until 4:20 [a.m.] at the latest." Because Officer Russell collected his first breath sample at 4:33 a.m., Vaughn argues that she could not have observed him for the requisite fifteen-minute pre-test period and that the trial court therefore abused its discretion in admitting his breath test results.

Officer Russell's testimony was that, in response to Vaughn's asking her what time he was "booked in," she stated "4:15ish [a.m.], 4:20 [a.m.]" She further testified that she was referring to the time that Vaughn "walked in the jail," but she clarified that the time she stated was only an approximation. Additionally, the trial court admitted without objection a video recording showing Officer Russell's interaction with Vaughn in the intox room. When the video begins, Officer Russell is seen inside the intox room. Approximately seven seconds after the video begins, Vaughn joins Officer Russell inside the intox room. Approximately nine minutes and forty-eight seconds later, in response to Vaughn asking her what time it was, Officer Russell told him that it was 4:25 a.m. Thus, based upon this video, the trial court could have reasonably concluded that Officer Russell had been in Vaughn's presence for at least nine minutes and forty-eight seconds at 4:25 a.m. The record reflects that Officer Russell did not begin Vaughn's breath test until approximately eight minutes later at 4:33 a.m. And Officer Russell testified that after Vaughn completed the field sobriety testing

10

she administered to him in the intox room, she and Vaughn went into the hallway where the intoxilyzer was located, she readied the machine for his test, and then she administered it to him.  She further stated that she considered the time she spent in the hallway with Vaughn prior to the test as part of the fifteen-minute observation period.  Given this evidence, it was well within the zone of reasonable disagreement for the trial court to conclude that Officer Russell had been in Vaughn's presence for at least fifteen minutes prior to administering his breath test.  We therefore hold that the trial court did not abuse its discretion in admitting the results of Vaughn's breath test.  We overrule Vaughn's first issue.

### B.  ALLEGED ERROR IN THE JURY CHARGE

In his second issue, Vaughn contends that the trial court erred in charging the jury.  Because the evidence at trial raised a fact issue concerning whether Officer Russell was in Vaughn's presence for the requisite fifteen-minute pre-test observation period, Vaughn requested, and the trial court granted, the following Texas Code of Criminal Procedure article 38.23 instruction:

> You are further instructed that the Texas Department of Public Safety requires that a breath test operator be in the continuous presence of a subject prior to the administration of a breath test.
>
> In considering these instructions, if you find from the evidence that Ms. Russell was not in the continuous presence of the Defendant prior to the administration of the breath test in this case[,] you will not consider such evidence for any purpose whatsoever.

11

*See* Tex. Code Crim. Proc. Ann. art. 38.23. Vaughn contends this instruction was erroneous because it misstated the law in that it omitted the "fifteen-minute" qualifier from the "continuous presence" requirement.

### 1. Invited Error

We first address the State's contention that Vaughn is estopped from raising his jury charge complaint under the doctrine of invited error. The doctrine of invited error "estops a party from making an appellate error of an action it induced." *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999), *cert denied*, 529 U.S. 1102 (2000); *accord Boortz v. State*, No. 02-11-00193-CR, 2012 WL 858623, at *1 (Tex. App.—Fort Worth Mar. 15, 2012, pet. ref'd) (mem. op., not designated for publication) ("A party may not complain on appeal that he was given the jury charge he requested."); *Willeford v. State*, 72 S.W.3d 820, 823–24 (Tex. App.—Fort Worth 2002, pet. ref'd) (Appellant estopped from raising charge error stemming from instructions he requested the trial court to leave in the charge). In short, as applicable here, the doctrine of invited error estops a party from "complain[ing] on appeal that he was given the jury charge he requested." *Boortz*, 2012 WL 858623, at *1.

### 2. Application

The record reflects that after the parties closed, the trial court held a charge conference outside of the jury's presence. The trial court asked the parties if they had any additional requests to include in the charge other than what would typically be included in the charge for a standard driving while

12

intoxicated case. Vaughn requested that the charge include a section 38.23 instruction on the ground that he raised a fact issue regarding Officer Russell's compliance with the fifteen-minute observation period. The trial court asked Vaughn if he had the requested section 38.23 instruction prepared, and Vaughn replied, "I can certainly get it, Judge. I'll just track the statute." The State objected, and the trial court recessed to give the parties time to gather materials pertinent to Vaughn's request. Before recessing, the trial court asked Vaughn to "write out the exact verbiage" of the instruction he wanted included in the court's charge, to which Vaughn replied, "Yes, ma'am."

Following the recess, the trial court heard argument on Vaughn's requested section 38.23 instruction, after which it stated that it would allow Vaughn's requested instruction. The trial court then asked Vaughn whether he had read the proposed instruction and whether it was to his satisfaction, and Vaughn replied, "Yes, Your Honor" to both questions. The trial court asked the parties to read over the entire proposed charge and inform it if there were any further objections. The trial court thereafter asked the State if it had any objections other than its objection that the charge should not include Vaughn's section 38.23 instruction, to which the State replied that it did not. The trial court asked Vaughn the same question, and he replied, "We have no issues, Your Honor."

The foregoing reflects that Vaughn requested and drafted the section 38.23 instruction that he now complains was erroneous. After stating that it was

13

granting his request for that instruction, the trial court gave Vaughn additional opportunity to read over the proposed charge, which included his requested instruction. The trial court then asked Vaughn whether he had any further typos, objections, or anything else, and he stated that he had no issues with the proposed charge. We conclude that Vaughn is estopped from complaining on appeal that the above section 38.23 jury instruction was erroneous when he requested it be included in the charge, drafted it, reviewed it, and agreed to it without objection. *Prystash*, 3 S.W.3d at 532; *accord Boortz*, 2012 WL 858623, at *1; *Willeford*, 72 S.W.3d at 823–24. We overrule Vaughn's second issue.

## III. CONCLUSION

Having overruled both of Vaughn's issues, we affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 23, 2016

14