

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00053-CR

MANUEL MATA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Criminal Court No. 1
Tarrant County, Texas[1]
Trial Court No. 1832353, Honorable Brian Bolton, Presiding

April 8, 2026

## MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, Manuel Mata, appeals from his conviction for interference with public duties, a class B misdemeanor, for which he received ninety days of incarceration.[2] By three issues, Appellant argues that (1) the interference with public duties statute is

---

[1] This matter was transferred from the Second Court of Appeals in Fort Worth pursuant to a docket equalization order of the Supreme Court of Texas. We apply the Second Court's precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE § 38.15(b).

unconstitutional as applied to the facts at hand, (2) the evidence was legally insufficient to support his conviction, and (3) the charge of the court included improper and harmful language. We affirm.

## BACKGROUND

Fort Worth Police Officer Jorden Mathieu stopped a vehicle for crossing into another lane of traffic and nearly causing an accident. He detected the smell of alcohol on the driver's breath, noticed a beer can in a cup holder, and observed the driver's red, watery eyes. When he realized the driver spoke only Spanish, Mathieu requested a Spanish-speaking officer and DWI officers to conduct an investigation. Once other officers took over the DWI investigation, Mathieu assumed scene security.

During the investigation, Appellant and a woman approached the scene shouting legal advice at the DWI suspect. Mathieu approached them and explained they could continue recording so long as they remained behind a spot on the pavement to provide distance. Photographs admitted as exhibits show a clear demarcation line, which corresponds with Mathieu's body-worn camera footage and Appellant's own recorded video. For the majority of the investigation, Appellant and the woman remained behind the demarcated line, walking up and down along it. In Appellant's recording, he can be seen and heard identifying the line that Mathieu originally directed him to stand behind.

After the DWI suspect was taken to jail, Mathieu continued his portion of the investigation by attempting to ascertain the suspect's identity through the Criminal Justice Information System, which contains law enforcement records and private information such as social security numbers, addresses, phone numbers, and criminal records.

2

Mathieu was also responsible for ensuring the suspect's vehicle remained secured until it could be towed. While Mathieu was searching for the suspect's identity, Appellant approached the driver-side window and recorded Mathieu's computer screen.

Mathieu testified that he is required to protect the confidential information in the system. He exited his patrol unit to address Appellant's recording because Appellant had crossed the established boundary. When Mathieu exited his vehicle, he repeatedly directed Appellant to get behind a line. Mathieu acknowledged this line was not the same as the original. Mathieu testified that exiting his vehicle to address Appellant's proximity disrupted his investigation. The videos show Mathieu explaining to Appellant that he is entering personal and confidential information into the computer and that his investigation is not finished.

Mathieu warned Appellant that if he did not get behind the line, he would be arrested. Appellant responded, "Fuck you. Your shit is done, stupid ass." Mathieu again directed Appellant to get behind the line. Appellant told Mathieu to "draw one," then began screaming "Which one? There's ten of them!" At that point, Mathieu arrested Appellant.

Mathieu agreed that members of the public are permitted to film and shout profanity at police officers. However, Mathieu explained that he is permitted to establish a physical boundary from where the public may record for the safety of the public and the officers. On cross-examination, Appellant asked Mathieu what was unreasonable about where he was standing when Mathieu decided to arrest him. Mathieu explained that where Appellant was standing was ambiguous. When officers set a boundary, they pick a physical, visible object for individuals to remain behind, such as a crack in the ground.

3

**ANALYSIS**

A. Appellant's "As Applied" Challenge

We begin with Appellant's second issue. A person commits an offense under Texas Penal Code § 38.15(a) if, with criminal negligence, he interrupts, disrupts, impedes, or otherwise interferes with a peace officer performing a duty or exercising authority imposed or granted by law. Appellant argues that § 38.15 is unconstitutional as applied to his particular facts. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) ("A litigant raising only an 'as applied' challenge concedes the general constitutionality of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances.").

An as-applied challenge is subject to waiver, must be preserved, and may not be raised for the first time on appeal. *See Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). As a prerequisite to presenting any complaint for appellate review, the appellant must show that the complaint was made to the trial court in a timely and specific manner, and that the trial court ruled on the complaint or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a).

The record reflects that Appellant filed a pretrial motion to suppress and renewed his arguments during trial. Citing *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017), Appellant contended that the boundary Mathieu established was unreasonable and that he was engaged in constitutionally protected activity when he filmed Mathieu. Appellant asked

4

the trial court to suppress all evidence obtained after Mathieu instructed him to step back. The trial court denied the motion.

A motion to suppress evidence and an as-applied constitutional challenge to a statute are procedurally distinct. A suppression motion seeks to exclude evidence. *Geuder v. State*, 115 S.W.3d 11, 15 (Tex. Crim. App. 2003). An as-applied challenge attacks the validity of the charging instrument itself, not the admissibility of evidence. *See Owens v. State*, 728 S.W.3d 155, 169 (Tex. Crim. App. 2025) ("[W]hen the State has chosen to apply a statute in a manner that violates a defendant's First Amendment rights, the proper remedy is dismissal.").

Appellant did not move to dismiss the information or argue that § 38.15 was unconstitutional as applied to his conduct. He sought suppression of the evidence. Because Appellant failed to raise an as-applied challenge to § 38.15 at the trial level, his first issue was not preserved for appellate review. *See Reynolds*, 423 S.W.3d at 383 ("'As applied' constitutional claims are subject to the preservation requirement and therefore must be objected to at the trial court in order to preserve error."). *See also Solis v. State*, 726 S.W.3d 394, 413 (Tex. Crim. App. 2025).

B. Sufficiency of the Evidence

In his first issue, Appellant argues the evidence is insufficient to support his conviction. We disagree.

Due process requires that a conviction be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021). The relevant standard is whether a rational jury could have found each essential element of the offense beyond a

5

reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider all evidence, direct and circumstantial, in the light most favorable to the verdict. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). We compare the statutory elements as defined by a hypothetically correct jury charge. *Id.* The trier of fact is the sole judge of the credibility and weight to be attached to the evidence. *Id.* When the record supports conflicting inferences, we presume the trier of fact resolved those conflicts in favor of the verdict and defer to that determination. *Id.*

A person commits an offense "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). A person acts with criminal negligence when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* § 6.03. Criminal negligence does not require proof of the defendant's subjective awareness of the risk of harm, but rather awareness of the attendant circumstances leading to such a risk. *Montgomery v. State*, 369 S.W.3d 188, 193 (Tex. Crim. App. 2012). The key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather the failure to perceive the risk at all. *Id.*

It is a defense to prosecution that the interruption, disruption, impediment, or interference alleged consisted of speech only. TEX. PENAL CODE § 38.15(d). A First

6

Amendment right to record the police exists, subject to reasonable time, place, and manner restrictions. *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017). This permits law enforcement to set a temporary "skirmish line" when circumstances call for it. *See Faust v. State*, 491 S.W.3d 733, 746–50 (Tex. Crim. App. 2015); *Duncantell v. State*, 230 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (finding sufficient evidence where officer told appellant to remain ten feet away while officers conducted an investigation but appellant refused to follow instructions); *Mata v. State*, No. 02-23-00110-CR, 2023 Tex. App. LEXIS 9379, at *14 (Tex. App.—Fort Worth Dec. 14, 2023, pet. ref'd) (mem. op., not designated for publication) ("Refusing to leave the scene when instructed to do so and distracting an officer from performing his duty constitute interference under Section 38.15.").

Appellant contends that he was convicted for the constitutionally protected activity of recording peace officers and nothing more than asking clarifying questions. According to Appellant, he sought clarification only because Mathieu changed the boundary. Appellant finally contends that it was impossible to interfere with a field sobriety test no longer underway.

We disagree with Appellant's characterizations as the record tells the complete story. Mathieu testified that Appellant was not arrested for his speech or the act of recording but for refusing to get behind the boundary and distracting Mathieu from completing his investigation. The record supports this testimony. Earlier in the encounter, Appellant crossed the line and directed profanity at the officers. Mathieu testified he could have arrested Appellant at that point but chose not to. Mathieu did not arrest Appellant until Appellant approached his patrol vehicle, recorded the computer screen displaying

7

confidential information, and then physically refused to adhere to Mathieu's repeated instructions to get behind the designated line.

The jury, as the sole judge of the credibility of witnesses and the weight of the evidence, was in the proper position to determine whether Appellant was asking clarifying questions or stalling out of obstinance. The jury could have believed that Appellant's physical refusal to get behind the identified line, coupled with his demand for clarification, was intended to delay or impede Mathieu's work. The videos demonstrate that before Appellant's arrest, Mathieu explained that his portion of the investigation was not over. A reasonable jury could have concluded that Appellant negligently disrupted or impeded the investigation by obstinately refusing to get behind the designated line, requiring Mathieu to divert attention and effort away from his duties.

Neither the information nor Mathieu's testimony indicated that Appellant's conviction was based on disrupting the field sobriety test specifically. As the video evidence suggests, Mathieu's portion of an investigation was not over after the field sobriety test concluded. Mathieu's role in the investigation continued, running a search for the suspect's identity and securing the suspect's vehicle until a tow truck arrived. Appellant's arrest did not result from his participation in protected activities.

We overrule Appellant's first issue.

C. Alleged Charge Error

By his third issue, Appellant argues that the trial court committed reversible error when it included the word "belligerent" in its charge to the jury. We disagree.

8

The application paragraph instructed the jury that it could find Appellant guilty if it found beyond a reasonable doubt that Appellant, with criminal negligence, interfered with Mathieu by:

- "approaching J. Mathieu and being belligerent" "and/or"

- failing to comply with J. Mathieu's directions to maintain a reasonable distance, "and/or"

- crossing a line the Defendant was directed to stay behind "and/or"

- recording the mobile data computer, causing Mathieu to stop what he was doing and engage with the Defendant.

During the charge conference, Appellant objected to "belligerent," asserting that its inclusion was prejudicial and the term was undefined. The trial court initially overruled the objection but asked whether Appellant had a further request. Appellant stated that if the term was retained, a definition should be provided. The parties then agreed to define "belligerent" as "inclined to or exhibiting assertiveness, hostility, or combativeness." The trial court incorporated this definition and asked whether both parties agreed the charge was accurate. Both answered affirmatively.

We review alleged jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Second, if error exists, we assess whether sufficient harm to require reversal resulted. *Id.* at 743–44. The charge must contain an accurate statement of the law and set out all essential elements of the offense. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

Notably, Appellant agreed the charge was accurate. After the trial court overruled his objection and incorporated a definition at his request, the court asked whether both sides agreed the charge accurately reflected the law. Appellant's counsel answered affirmatively. "Under the doctrine of invited error, if a party requests or moves the court to make an erroneous ruling, and the court rules in accordance with the request or motion, the party responsible for the court's action cannot take advantage of the error on appeal." *Willeford v. State*, 72 S.W.3d 820, 823 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Prystash v. State*, 3 S.W.3d 522, 532 (Tex. Crim. App. 1999) (holding invited error estops party from complaining of charge error that it induced)).

Nevertheless, we hold that the court did not reversibly err. The relevant offense is interference with a peace officer performing a duty. *See* TEX. PENAL CODE § 38.15(a)(1). How a defendant interferes is a question of manner and means. A trial court may charge the jury with alternate manner and means of committing the same offense if the evidence supports them. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (en banc).

Here, "belligerent" conduct describes only one of four alternative methods of interfering. It does not add or alter an element. Significant here, the evidence was sufficient to support conviction on the remaining three. Mathieu testified he repeatedly directed Appellant to get behind the line, but Appellant physically refused. The video evidence shows Appellant crossed the established boundary. Mathieu also testified that Appellant approached the driver-side window and recorded the in-unit screen, forcing him to exit his vehicle and diverting his attention from the investigation. The jury could have found Appellant guilty on any of these three manners and means without regard to

10

whether Appellant was "belligerent." Accordingly, even if inclusion of the term was error, it was harmless.

We overrule Appellant's third issue.

**CONCLUSION**

Having overruled all of Appellant's issues, we affirm the trial court's judgment.


Lawrence M. Doss<br>Justice

Do not publish.