# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-17-00695-CR

**Sarah Christine Padon, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
## NO. CR2016-582, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the memorandum opinion and judgment dated July 31, 2019, substitute the following memorandum opinion and judgment in their place, and deny appellant's motion for rehearing.

A jury convicted appellant Sarah Christine Padon of manslaughter, *see* Tex. Penal Code § 19.04, and assessed her punishment at confinement for twenty years in the Texas Department of Criminal Justice and a fine of $10,000, *see id.* § 12.33. On appeal, appellant challenges the sufficiency of the evidence, contends that the trial court erred in denying her requested jury-charge instruction, complains that she received ineffective assistance of counsel at trial, and asserts that the trial court erred by admitting irrelevant evidence. We find no reversible error. However, we have found non-reversible error in the written judgment of conviction. We

will modify the judgment to correct the error and, as modified, affirm the trial court's judgment of conviction.

## BACKGROUND

The jury heard evidence that shortly after 9:00 p.m. on June 17, 2012, Heidi Frericks was riding as a passenger in her Buick with her friend, April Hand, who was driving, and her five-year-old son, Conner, who was riding in the backseat. The group was travelling on FM 2673, a two-lane roadway (that had one lane in each direction) with no divider between the lanes and a small shoulder adjacent to each lane. As the car went around a curve, it was struck head-on by appellant's Ford Explorer. Hand was killed instantly; Frericks and her son were both seriously injured.

At trial, Frericks recounted what she could recall about the collision. She explained that, before the impact, she had turned briefly to look at her son and then turned back to the front and "everything was just black." She did not see what hit them and did not see lights approaching before they were hit. Frericks described Hand as a "very cautious driver" and indicated that she did not see any reaction from Hand before the impact. Regarding the driving conditions, Frericks testified that it was "between middle of dusk to dark" and expressed her opinion that it was dark enough that a person's headlights should have been on. She said that she knew for a fact that her car's headlights were on. Frericks also described the injuries that she and her son sustained in the collision.

Lawrence Escamilla, a trooper with the Department of Public Safety, responded to the 911 dispatch for the collision. When he arrived at the location, he found the two vehicles in the roadway, more in the North lane. He opened the driver's door on the Explorer and found

2

appellant, crying and screaming, with her legs pinned by the dashboard. Trooper Escamilla detected an odor of an alcoholic beverage and noticed that the switch for the Explorer's headlights was in the off position. The trooper testified that appellant told him that "all [she] saw was a big boom." When emergency medical services personnel arrived to assist appellant, Trooper Escamilla went to the Buick. He immediately recognized that the driver was deceased. He heard the young boy screaming and saw that the driver's seat was crushing the child's legs, so he informed the paramedics that the boy was stuck. The trooper tried to get information about what had happened from the passenger, later identified as Frericks, who was injured such that she was in and out of consciousness.

After the injured parties were removed from the scene to be transported to the hospital, Trooper Escamilla, who had extensive experience and training in accident investigation, investigated the crash. He discovered that there were no road marks or "gouge marks" on the South side of the road (the lane appellant was driving in) but there were gouge marks on the North lane (the lane the Buick was in). The trooper explained that gouge marks, from debris indenting the roadway, indicate the area of impact in a collision. He concluded that the area of impact was on the North side of the road, in the victim's lane of travel. Trooper Escamilla also testified that there was no indication that appellant braked at all before the collision—explaining that there were no skid marks on the road "so there was no breaking whatsoever." Ultimately, the trooper concluded that appellant caused the collision because she was driving on the wrong side of the road—she was "pretty far off" "on the wrong side of the roadway"—without her headlights on. His testimony indicated that he also thought that alcohol consumption might have been a factor.

During his investigation, the trooper inventoried the vehicles. He found an open container of alcohol in appellant's Explorer—a twelve-ounce can of beer that was a quarter full. Trooper Escamilla described the location of the collision as a "pitch black" blind curve and testified that it was "dangerous" to drive in that particular area without headlights on and "unsafe" to travel at that time without headlights on.[1] He also expressed his opinion that it is more difficult to maintain control of a vehicle, stay in the lane of travel, and operate a car around a curve when consuming alcohol. During the trooper's testimony, State's Exhibit #10, a page from appellant's medical records, was admitted. The exhibit reflected that the attending physician who treated appellant consulted a licensed chemical dependency counselor "due to [appellant's] intoxication."

Several days after the collision, Trooper Escamilla interviewed appellant at the hospital. Appellant told him that she had been floating all day on the river, since about 12:30 p.m., and had been drinking. She also said that she met a man and went to a nearby bar and grill to eat and drink some more. Appellant explained to the trooper that, afterward, she was

---

[1] Trooper Escamilla conceded that, given that the official time of the sunset that night was at 8:34 p.m., the law would require headlights only at 9:04 p.m., thirty minutes after sunset. See Tex. Transp. Code §§ 547.302(a)(1) ("A vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle . . . at nighttime."), 541.401 (defining "nighttime" as "the period beginning one-half hour after sunset and ending one-half hour before sunrise"). However, he further explained that "there's more to that law" because the use of headlights is also related to road conditions. He expressed that, given the dangerous conditions of the roadway and the level of darkness, appellant should have had her headlights on. See id. § 547.302(a)(2) ("A vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle . . . when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead.").

4

tired and did not want to drive all the way home so she was going to follow the man to San Antonio.[2]  She indicated that she did not know how much she had been drinking.

As part of the investigation at the scene, Trooper Escamilla took photographs of the crash scene, which were admitted into evidence during his testimony.  He also collected the light bulbs from the rear taillights of both vehicles at the scene.  At trial, a senior master auto technician described how the three-bulb system in the taillights of a Ford Explorer operated.  He explained that the top and bottom bulbs were single-filament lamps.  The top one is for the turn signal; the bottom one is for the reverse lights.  The middle bulb has two filaments.  One filament is powered by the park lights or headlights; the other filament is powered by the brake lights.  The technician clarified that when the headlights of the Explorer are turned on, only the smaller thinner filament of the middle bulb is illuminated.  When the brake pedal is depressed, only the larger heavier filament of the middle bulb is illuminated.

In addition, a trace evidence analyst, who had special training in lamp-filament analysis, testified about her analysis of the bulbs from appellant's Explorer.  Based on her analysis of both the chemical reactions and physical interactions of the bulbs, she concluded that the dual-filament lamp from appellant's left taillight was off when the filaments in the bulb were broken.  The expert was unable to make a determination of whether the dual-filament lamp from the Explorer's right taillight was off or on.[3]

---

[2]  Trooper Escamilla testified that appellant never described the man or gave the trooper the name of the man she was following, and he was unable to identify him.

[3]  The expert testified that in the lamp analysis, the examiner looks for various indications of what happened to the bulb.  She explained that certain combinations of characteristics could be explained in multiple ways, and "[i]f it could be explained multiple ways, [the examiners] are unable to make a determination just based on what is in front of [them] and so, therefore, [they] have to come up with an [sic] conclusion of indeterminate."  In contrast, "if all of the

The State called six witnesses at trial: the communication supervisor for the sheriff's office, who provided the recordings of the 911 calls that night; Frericks, who testified about what she recalled of the collision; Trooper Escamilla, who testified about responding to the collision, his investigation of the collision, and his interview with appellant; a forensic pathologist, who testified about conducting Hand's autopsy and the findings concerning Hand's injuries and cause of death; the senior master auto technician, who testified about the three-bulb taillight system of a Ford Explorer; and the trace evidence analyst, who testified about the lamp-filament analysis she conducted. Appellant called no witnesses. After extensive deliberations and a supplemental jury charge from the court,[4] the jury found appellant guilty of manslaughter as charged in the indictment.

During the punishment phase, the State presented evidence of appellant's prior DWI conviction and evidence that, on several occasions, appellant violated her bond condition prohibiting the consumption of alcohol. In closing argument, appellant sought community supervision; the State asked for the maximum sentence of twenty years. In its punishment verdict, the jury returned an affirmative finding that appellant used a deadly weapon during the commission of the offense, assessed appellant's punishment at the maximum sentence of twenty years, and, in addition, assessed the maximum fine of $10,000.

_____

characteristics indicate one explanation, then [the examiner] can conclude that that explanation was either on or off was the case."

[4] The supplemental charge, known as an "*Allen* charge," attempts to break a deadlocked jury by instructing jurors that the result of a hung jury is a mistrial and that jurors at a retrial would face essentially the same decision, encouraging them to resolve their differences without coercing one another or violating their individual choices. *See Allen v. United States*, 164 U.S. 492, 501 (1896).

Appellant filed a motion for new trial, asserting that the verdict was contrary to the law and evidence, and an amended motion for new trial, contending that the trial court erred in denying appellant's requested jury-charge instruction on the lesser included offense of criminally negligent homicide. The amended motion for new trial was overruled by operation of law. This appeal followed.

## DISCUSSION

Appellant raises four points of error. First, she challenges the sufficiency of the evidence supporting her conviction. Second, she complains about jury-charge error. Third, she argues that if trial counsel's actions preclude appellate review of the complaint asserting jury-charge error, counsel rendered ineffective assistance. Lastly, appellant argues that the trial court erroneously admitted an excerpt from her hospital records.

### Sufficiency of the Evidence

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Musacchio v. United States*, —— U.S. ——, 136 S. Ct. 709 (2016); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). In our sufficiency review we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the

prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))). "The key question is whether 'the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Morgan*, 501 S.W.3d at 89 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo*, 559 S.W.3d at 487; *see Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we

8

defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757; *see Musacchio*, 136 S. Ct. at 715 (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778); *accord Arroyo*, 559 S.W.3d at 487.

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *accord Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). The standard of review is the same for direct and circumstantial evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin*, 473 S.W.3d at 317.

A person commits the offense of manslaughter "if he recklessly causes the death of an individual." Tex. Penal Code § 19.04(a). Manslaughter is a result-oriented offense; thus, the defendant's culpable mental state must relate to the result of his conduct—that is, the causing of the death. *Schroeder v. State*, 123 S.W.3d 398, 399–401 (Tex. Crim. App. 2003). "A person acts recklessly, or is reckless, . . . when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." Tex. Penal Code § 6.03(c). The risk created "must be of such a nature and degree that its disregard constitutes a gross deviation from the

9

standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

"Recklessness requires the defendant to actually foresee the risk involved and to consciously decide to ignore it." *Williams*, 235 S.W.3d at 751; *see* Tex. Penal Code § 6.03(c). Whether the actor is aware of the requisite risk is a conclusion to be reached by the trier of fact from all the evidence and the inferences drawn therefrom. *Miller v. State*, No. 03-07-00527-CR, 2010 WL 140390, at *5 (Tex. App.—Austin Jan. 13, 2010, pet. ref'd) (mem. op., not designated for publication); *see Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978) (observing that proof of culpable mental state generally relies on circumstantial evidence and "whether one is aware of a requisite risk . . . is a conclusion to be drawn through inference from all the circumstances by the trier of fact"). "The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk." *Dillon*, 574 S.W.2d at 95. A defendant, however, need not be aware of the specific risk of another's death in order to commit manslaughter. *Miller*, 2010 WL 140390, at *5; *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd).

The indictment in this case charged appellant with manslaughter, alleging that appellant

> did then and there recklessly cause the death of an individual, to-wit: April Hand, by failing to maintain a proper lookout for traffic, by failing to maintain a single lane, by driving into the oncoming lane of traffic, by driving at night without the use of her vehicle's headlights, by failing to timely apply the brakes of her vehicle, by failing to maintain proper control of her motor vehicle, or by allowing the vehicle being driven by [appellant] to collide with the motor vehicle being driven by the said April Hand.

10

These various allegations of how appellant drove constitute how appellant was reckless; that is, they are the manners and means of how she committed manslaughter. *See Flores v. State*, 536 S.W.3d 560, 576 (Tex. App.—San Antonio 2017, pet. ref'd). These alternative manner and means were presented disjunctively to the jury; thus, proof of any one is sufficient for conviction. *See Hooper*, 214 S.W.3d at 14; *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

In this case, it is undisputed that the collision caused Hand's death. It is also undisputed that appellant was driving the Explorer that crashed head-on into Hand's car. The question is whether the evidence at trial is sufficient to support a finding beyond a reasonable doubt that appellant recklessly caused Hand's death by driving as alleged in the indictment.

In her brief, appellant analyzes the alleged manners and means separately to argue that the evidence does not demonstrate that particular driving manner or that appellant acted recklessly when driving in the alleged manner. She also complains about the lack of evidence "regarding the mechanical condition of the vehicles involved, nor road or traffic conditions that could have caused the accident."[5] She also hypothesizes about what the jury could have believed based on particular evidence, which she contends would be inconsistent with appellant acting recklessly.

However, when examining the legal sufficiency of the evidence, the reviewing court must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Zuniga*, 551 S.W.3d at 733; *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim.

---

[5] In particular, she criticizes the lack of evidence showing "whether there was or was not any debris found on the road that could have caused Appellant's car to swerve out of her lane and into oncoming traffic," "whether there were any animals or other vehicles on the roadway that did or did not affect Appellant's vehicle," and "whether or not a mechanical condition of either vehicle could have caused the accident."

11

App. 2017). Furthermore, legally sufficient evidence need not exclude every conceivable alternative to a defendant's guilt. *Johnson*, 560 S.W.3d at 226; *Ramsey v. State*, 473 S.W.3d 805, 811 (Tex. Crim. App. 2015); s*ee Geesa v. State,* 820 S.W.2d 154, 160–61 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 570 (Tex. Crim. App. 2000) (disavowing reasonable-alternative-hypothesis construct). Moreover, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder, s*ee Montgomery*, 369 S.W.3d at 192, but must, instead, defer to the credibility and weight determinations of the factfinder, *Cary*, 507 S.W.3d at 757. Appellant's argument, in direct opposition to the implicit factual determinations and inferences made by the jury in this case, would have us disregard that standard for our review.

The evidence at trial showed that (1) appellant's Explorer collided with Hand's car head-on; (2) the impact occurred in Hand's lane of travel; (3) lamp-filament analysis of the taillights of appellant's Explorer indicated that the duel-filament bulb, which related to the headlights, was off at the time of the impact; (4) there were no skid marks indicative of braking on the road; (5) appellant admitted that she had consumed alcohol before the collision (throughout the day at the river and just before at the bar and grill); (5) Trooper Escamilla smelled alcohol when he made contact with appellant in her Explorer; (6) appellant had an open beer can, only one-quarter full, in her Explorer at the time of the collision; (7) appellant's hospital records indicated that the doctor had determined that appellant was intoxicated; and (8) expert testimony established that alcohol consumption affects a person's ability to operate a vehicle.

12

Reasonable inferences from this evidence include the inferences that (1) appellant was driving her Explorer in the lane of oncoming traffic at the moment of impact; (2) appellant was driving without her headlights on at the time of the collision; (3) appellant did not apply her brakes before the impact; (4) appellant had consumed unknown quantities of alcohol before the collision; (5) appellant was possibly drinking alcohol (the beer) when she was driving at or before the time of the collision; and (6) appellant had alcohol in her system at the time of the collision.

Recklessness can be applied generally to the act of driving. *Zorn v. State*, 315 S.W.3d 616, 620 (Tex. App.—Tyler 2010, no pet.); *Miller v. State*, No. 01-03-00819-CR, 2005 WL 825762, at *2 (Tex. App.—Houston [1st Dist.] Apr. 7, 2005, pet. ref'd) (mem. op., not designated for publication); *see Porter v. State*, 969 S.W.2d 60, 63 (Tex. App.—Austin 1998, pet. ref'd); *see, e.g.*, *Aliff v. State*, 627 S.W.2d 166, 172 (Tex. Crim. App. 1982) (concluding that recklessness was shown where defendant operated motor vehicle at over 100 miles per hour, passed a car on shoulder, locked his brakes, and skidded into collision with another car); *Arellano v. State*, 54 S.W.3d 391, 393 (Tex. App.—Waco 2001, pet. ref'd) (concluding that reckless element was satisfied where there were visible signs indicating "reduced speed ahead" but skid marks showed that defendant was driving at excessive speed under circumstances); *Trepanier*, 940 S.W.2d at 830 (determining that driver was reckless when he attempted to illegally pass traffic on right shoulder of road); *Banister v. State*, 761 S.W.2d 849, 850 (Tex. App.—Beaumont 1988, no pet.) (holding that recklessness was shown where truck driver put truck in reverse during heavy fog on highway and struck driver proceeding legally in same lane).

"[A]t the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct." *Williams*, 235 S.W.3d at 751 (quoting *Lewis v. State*, 529 S.W.2d 550, 553

(Tex. Crim. App. 1975)). The reckless person neither desires that the risk occur nor is he reasonably certain that it will occur; he does, however, perceive it. *Dillon*, 574 S.W.2d at 96; *Stepherson v. State*, 523 S.W.3d 759, 763 (Tex. App.—Houston [14th Dist.] 2017, no pet.). In this case, the evidence at trial showed several acts by appellant that revealed conscious risk creation—"a conscious disregard for the risk involved in driving in the manner in which the appellant was driving," *see Aliff*, 627 S.W.2d at 172—including, not staying in her lane of traffic, driving fully in the lane of oncoming traffic (not simply veering slightly into it), driving without headlights under conditions in which they were needed, not applying her brakes before the impact, not controlling her Explorer, not attempting to maneuver to avoid the collision, and driving after consuming alcohol. *See, e.g.*, *Porter*, 969 S.W.2d at 63–64 (concluding evidence was sufficient to support conviction for manslaughter where defendant who drove into oncoming traffic during early morning hours, had used methamphetamine during preceding night, and had acknowledged prior to collision that he was "very much fatigued" and should not be driving); *cf. Galvan v. State*, No. 13-14-00059-CR, 2016 WL 1393507, at *5 (Tex. App.—Corpus Christi Apr. 7, 2016, pet. ref'd) (mem. op., not designated for publication) (observing that Texas courts "have found evidence sufficient to support a conviction for reckless conduct based upon impaired driving due to the consumption of any amount of alcohol").

From the combined and cumulative force of all the evidence presented in this case, *see Jenkins*, 493 S.W.3d at 599 (stating that in an evidentiary sufficiency review, appellate court must consider "all of the evidence" and "the cumulative force of all the incriminating circumstances"), and the reasonable inferences from it, *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (recognizing that "the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing

14

inferences from the evidence"), the jury could have found beyond a reasonable doubt that appellant recklessly caused Hand's death by driving in one or more of the manners and means alleged in the indictment. *See Zuniga*, 551 S.W.3d at 733 (confirming that "circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction"); *Nowlin*, 473 S.W.3d at 317 ("[W]here the inferences made by the factfinder are reasonable in light of 'the cumulative force of all the evidence when considered in the light most favorable to the verdict,' the conviction will be upheld.") (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). Therefore, we conclude that the evidence is sufficient to support appellant's conviction for manslaughter. We overrule appellant's first point of error.

## Jury-Charge Error

The record before us does not reflect that appellant requested an instruction in the jury charge on the lesser included offense of criminally negligent homicide. *See* Tex. Code Crim. Proc. art. 36.15 (requiring defendant to request jury-charge instruction by presenting written instruction to court or by dictating instruction to court reporter in presence of court and prosecutor). Nevertheless, during the jury-charge conference, the trial court entertained the State's argument against including such an instruction. Ultimately, over the State's objection, the trial court included an instruction on the lesser included offense of criminally negligent homicide in the jury charge.

However, the trial court interrupted its reading of the jury charge in open court to sua sponte raise the issue of the statute of limitations for criminally negligent homicide. After

15

reading portions of the charge informing the jury that there is no period of limitations for the offense of manslaughter, the following ensued:

| | |
|---|---|
| TRIAL COURT: | What about criminal negligence? |
| | Well, nobody objected to the Charge. I'll just leave it the way it is. |
| | I'm sure there's a limitation on criminal negligence. I'm not sure, but there might be. |
| DEFENSE COUNSEL: | I believe it's three years, Judge. |
| TRIAL COURT: | It's a non-issue anyway. You're well within any statute of limitations. |
| | What say you, [Defense Counsel]? |
| DEFENSE COUNSEL: | I wasn't thinking about the statute of limitations in a criminally negligent homicide before, but now — |
| PROSECUTOR: | There's no limitation for murder and manslaughter. And I think it falls under that catch-all three years from the date of the offense for all other felonies. |
| DEFENSE COUNSEL: | This occurred on June 17th, 2012.[6] |
| TRIAL COURT: | Then how can I give you a lesser included offense on it? |
| | You want a few minutes to talk this over? |
| DEFENSE COUNSEL: | Yes, Judge. |
| TRIAL COURT: | Ladies and gentlemen, I think we just found a fly in the ointment and I think we're going to have to take a little recess here. |

Outside the presence of the jury, the discussion continued:

---

[6]   The record reflects that the manslaughter indictment in this case was filed on August 3, 2016.

16

| | |
|---|---|
| TRIAL COURT: | I think I've read a case on this before. |
| DEFENSE COUNSEL: | It falls under the three years, Judge. |
| PROSECUTOR: | If you want to read it to — |
| DEFENSE COUNSEL: | I just did. |
| TRIAL COURT: | I think it does, too. So we're going to take out all mention of criminal negligence. |
| DEFENSE COUNSEL: | Yep. |
| PROSECUTOR: | Is that an agreement? |
| TRIAL COURT: | Yeah. |
| PROSECUTOR: | You agree to that? |
| DEFENSE COUNSEL: | I agree, Judge. |
| TRIAL COURT: | Okay. We're going to have to redo the Charge and take out all of the — take out the lesser included.<br><br>Why didn't you think of that before, [Prosecutor]? |
| PROSECUTOR: | Got my mind so caught up on trying to find the case law. |

The proceedings then briefly recessed.

After the recess, appellant's counsel, outside the presence of the jury, presented case law supporting the trial court's position that an instruction on the lesser included offense of criminally negligent homicide could not be included in the jury charge because the statute of limitations had run. Specifically, counsel read an excerpt from *Gallardo v. State*, 768 S.W.2d 875, 879 (Tex. App.—San Antonio 1989, pet. ref'd), which states:

> [O]ne may not be convicted of a lesser included offense if the period of limitations for the lesser offense has expired, notwithstanding the fact that one could be convicted of the greater crime or offense charged in the Indictment due to a longer applicable period of limitations.

Counsel noted that *Gallardo* cited *McKinney v. State*, 257 S.W. 258 (Tex. Crim. App. 1923), a case from the Court of Criminal Appeals. The trial court responded, "There you go." When the jury was brought back into the courtroom, the trial court told the jurors that it was going to "pick up right with the last paragraph [the court] was reading" and informed them that "[t]here will no longer be any reference to criminally negligent homicide anywhere in this Charge."

In her second point of error, appellant asserts that the trial court erred in denying her request for a jury-charge instruction on the lesser included offense of criminally negligent homicide.

"It is well-established in our jurisprudence that 'an accused cannot invite error and then complain thereof.'" *Capistran v. State*, 759 S.W.2d 121, 124 (Tex. Crim. App. 1982) (quoting *Holmes v. State*, 146 S.W.2d 400, 403 (Tex. Crim. App. 1940)). Under the doctrine of invited error, a party is estopped from seeking appellate relief based on error that it induced.[7] *Cary*, 507 S.W.3d at 755; s*ee Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011) ("The law of invited error provides that a party cannot take advantage of an error that it invited or caused, even if such error is fundamental. In other words, a party is estopped from seeking appellate relief based on error that it induced."). "To hold otherwise would be to permit [the

---

[7] The Court of Criminal Appeals has explained that invited error does not involve a waiver of error previously committed, but rather the exclusion from an appellate court's consideration of those actions requested in the trial court by the complaining party. *Prystash v. State*, 3 S.W.3d 522, 531–32 (Tex. Crim. App. 1999). Therefore, "[t]he doctrine of invited error is properly thought of, not as a species of waiver, but as estoppel." *Id.* at 531.

18

party] to take advantage of his own wrong." *Woodall*, 336 S.W.3d at 644 (quoting *Prystash*, 3 S.W.3d at 531).

The invited error doctrine applies to jury charges. *Jynes v. State*, No. 01-06-00931-CR, 2007 WL 1152911, at *4 (Tex. App.—Houston [1st Dist.] Apr. 19, 2007, no pet.) (mem. op., not designated for publication); *see Willeford v. State*, 72 S.W.3d 820, 823 (Tex. App.—Fort Worth 2002, pet. ref'd) ("The invited error rule in jury charges is one of long standing."). The Court of Criminal Appeals has consistently held that a defendant cannot complain about error in a court's jury charge when the defendant requested that the allegedly erroneous jury charge be given. *See Tucker v. State*, 771 S.W.2d 523, 534 (Tex. Crim. App. 1988); *Livingston v. State*, 739 S.W.2d 311, 341 (Tex. Crim. App. 1987); *Gutierrez v. State*, 659 S.W.2d 423, 424 (Tex. Crim. App. 1983); *Cadd v. State*, 587 S.W.2d 736, 741 (Tex. Crim. App. 1979). "Even if the [jury] charge is later found to be erroneous, the accused can not first invite error and then complain about it on appeal." *Tucker*, 771 S.W.2d at 534.

Here, appellant affirmatively agreed, repeatedly, to the trial court removing the instruction on the lesser included offense from the jury charge. Thus, the doctrine of invited error precludes appellant from seeking appellate relief based on alleged error that she induced by affirmatively agreeing to the trial court's action. *See, e.g.*, *Druery v. State*, 225 S.W.3d 491, 505–06 (Tex. Crim. App. 2007) (applying law of invited error to claim of jury-charge error and concluding that appellant was estopped from raising claim that failure to include instruction on lesser included offense in jury charge amounted to fundamental error because appellant "not only did not object to the omission of the lesser-included instruction" but "affirmatively requested, after inquiry by the trial judge, that the lesser-included instruction not be given"). Accordingly, we overrule appellant's second point of error.

19

**Ineffective Assistance of Counsel**

In her third point of error, appellant contends that her trial counsel rendered ineffective assistance because he agreed to the trial court's removal of the instruction for the lesser included offense of criminally negligent homicide from the jury charge.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013); *see Strickland*, 466 U.S. at 689. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an

20

ineffective-assistance claim. *Nava*, 415 S.W.3d at 308. If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

As discussed in the previous point of error, the trial court interrupted its reading of the jury charge to sua sponte raise an issue concerning the statute of limitations of criminally negligent homicide. The evidence reflects that the collision between appellant's Explorer and Hand's Buick occurred on June 17, 2012. The record reflects that the indictment for manslaughter in this case was returned on August 3, 2016. The parties and the court agreed that, under the catch-all statute of limitations provision, the limitations period for criminally negligent homicide is three years. *See* Tex. Code Crim. Proc. art. 12.01(7) (providing that limitations period for "all other felonies" not specified in statute is "three years from the date of the commission of the offense"). Therefore, the limitations period for criminally negligent homicide had run at the time the manslaughter indictment was returned, more than four years after the date of the collision. Accordingly, the trial court concluded that it could not instruct the jury on that lesser included offense, and trial counsel agreed. Subsequently, counsel presented case law seemingly confirming that position. *See Gallardo*, 768 S.W.2d at 879; *but see State v. Yount*, 853 S.W.2d 6, 8 (Tex. Crim. App. 1993) (observing that "[i]n *Gallardo*, the statute of limitations was determined to have already run on the offense for which the defendant was indicted when the indictment was presented" and distinguishing case where statute of limitations had not expired on felony offense for which defendant was indicted). Thus, it appears from the record that trial counsel, like the trial court, believed that the instruction on the lesser included offense

could not be submitted to the jury because prosecution for that offense was barred by the statute of limitations and agreed to the removal of the instruction for that reason.

Appellant contends that trial counsel's agreement to the court's removal of the instruction from the jury charge was deficient performance for two reasons. First, she observes that, even if counsel believed that prosecution for criminally negligent homicide was barred by the expiration of the limitations period, a defendant can waive a limitations-barred defense. *See Ex parte Heilman*, 456 S.W.3d 159, 168 (Tex. Crim. App. 2015) (recognizing that "a limitations defense standing alone is merely a procedural 'act of grace' by the legislature that can be forfeited"); *Yount*, 853 S.W.2d at 9 (concluding that defendant who requested that jury be instructed on lesser included offense was estopped from attacking conviction for time-barred lesser included offense because he "cannot benefit from the lesser included offense instruction and then attack his conviction of that lesser included offense on limitations grounds").

In this case, appellant filed a motion for new trial and an amended motion for new trial. Neither motion, however, asserted ineffective assistance of trial counsel as a ground for a new trial. Although the record in this case provides some indication of what trial counsel's strategy may have been for agreeing to the removal of the instruction, the record is silent as to the reasons underlying trial counsel's decision not to waive the limitations-barred defense. The record is devoid of any information about trial counsel's reason for doing so. Thus, we cannot discern what counsel's strategy was or whether it was a reasonable strategy under these circumstances. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) ("[T]he fact remains that the appellate record is still silent as to *why* trial counsel failed to so object. Therefore, the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable."). The record before this Court is not

sufficiently developed to allow us to evaluate the purported failure of trial counsel to waive the limitations-barred defense because counsel has not been given an opportunity to respond to this claim of ineffectiveness. *See Menefield*, 363 S.W.3d at 593.

Appellant also maintains that trial counsel's agreement to the removal of the jury-charge instruction on the lesser included offense constituted deficient performance because the "lapsed" limitations period for criminally negligent homicide was "not actually a problem" because the statute of limitations was tolled.

Article 12.05 of the Code of Criminal Procedure provides in relevant part:

> (b) The time during the pendency of an indictment, information or complaint shall not be computed in the period of limitation.
>
> (c) The term, "during the pendency," as used herein, means that period of time beginning with the day the indictment, information, or complaint is filed in a court of competent jurisdiction, and ending with the day such accusation is, by an order of a trial court having jurisdiction thereof, determined to be invalid for any reason.

Tex. Code Crim. Proc. art. 12.05(b), (c). These provisions, however, do not apply to the manslaughter indictment in this case as it was returned only after the statute of limitations for criminally negligent homicide had run on June 12, 2015. Thus, the manslaughter indictment could have no tolling effect. Because the record before us reflects the limitations period for criminally negligent homicide was not tolled by the manslaughter indictment and, therefore, had expired, trial counsel was correct that the lesser included offense for criminally negligent homicide could not be submitted to the jury.

Appellant asserts in her brief that a separate indictment for intoxication manslaughter was returned against appellant on June 5, 2013, in cause number CR2013-268 in

the 207th judicial district court, and that indictment tolled the statute of limitations for criminally negligent homicide. *See Hernandez v. State*, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004) ("[A] prior indictment tolls the statute of limitations under Article 12.05(b) for a subsequent indictment when both indictments allege the same conduct, same act, or same transaction."). She points to that intoxication-manslaughter indictment as evidence showing that trial counsel rendered deficient performance in concluding that the statute of limitations precluded submission of a jury-charge instruction on criminally negligent homicide. However, the intoxication-manslaughter indictment is not part of the appellate record in this case. A claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield*, 363 S.W.3d at 592; *Goodspeed*, 187 S.W.3d at 392.

We acknowledge that the intoxication-manslaughter indictment was attached to appellant's amended motion for new trial. However, that motion was overruled by operation of law without a hearing. Post-trial motions, like a motion for new trial, "are not self-proving and any allegations made in support of them by way of affidavit or otherwise must be offered into evidence at a hearing." *Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009); *see Lamb v. State*, 680 S.W.2d 11, 13 (Tex. Crim. App. 1984) ("Motions for new trial are not self-proving. They must be supported by affidavits and the affidavits must be offered into evidence."). Because the evidence appellant relies on—the intoxication-manslaughter indictment—was never offered or admitted at a hearing, we are precluded from considering such evidence on appeal. *See Rouse*, 300 S.W.3d at 762; *see also Jack v. State*, 149 S.W.3d 119, 121 n.1 (Tex. Crim. App. 2004) (appellate courts may not consider factual assertions outside appellate record; documents

24

outside record do not "concern[ ] events or actions in the trial court and . . . cannot be considered for the truth of the matters asserted.").

Appellant asks us to take judicial notice of the intoxication-manslaughter indictment filed in CR2013-268 because our court handled an appeal in that proceeding.[8]  An appellate court may, within its discretion, take judicial notice of adjudicative and legislative facts on appeal.  Tex. R. Evid. 201(d); *Emerson v. State*, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994).  Further, "an appellate court may take judicial notice of its own records in the same or related proceedings involving same or nearly same parties." *Fletcher v. State*, 214 S.W.3d 5, 7 (Tex. Crim. App. 2007).   However, the Court of Criminal Appeals has cautioned that

> although an appellate court may take judicial notice of its own records in the same or related proceedings involving same or nearly same parties, the general rule is that an appellate court cannot go to the record of another case for the purpose of considering [evidence] found there but not shown in the record case before it.

*Fletcher*, 214 S.W.3d at 7 (quoting *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987) (internal citations and footnote omitted).  An appellate court "[cannot] look to records in other cases to supply factual deficiency in the case before it." *Turner*, 733 S.W.2d at 223; *accord Magic v. State*, 217 S.W.3d 66, 72 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  For that reason, we decline to take judicial notice of the intoxication-manslaughter indictment outside the appellate record of this case. *See, e.g.*, *Jones v. State*, 711 S.W.2d 634, 636 (Tex. Crim. App.

---

[8]  In cause number CR2013-268, appellant filed a motion to suppress the results of a blood-draw analysis that reflected that appellant's blood-alcohol concentration was 0.14.  The trial court initially denied but subsequently granted the motion based on the decision by the Court of Criminal Appeals in *State v. Villarreal*, 475 S.W.3d 784 (Tex. Crim. App. 2014).  The State appealed the trial court's ruling, and this Court issued an opinion affirming the trial court's granting of appellant's motion to suppress. *See State v. Padon*, No. 03-16-00532-CR, 2018 WL 6695793, at *4 (Tex. App.—Austin Dec. 20, 2018, no pet.) (mem. op., not designated for publication).

25

1986) (even though Court of Criminal Appeals had been made aware that appellant's prior conviction was affirmed by court in prior opinion, court "decline[d] to review the records of another case to find support for contentions raised in [current] appeal" and "[would] not consider the record of that appeal"); *see also Davis v. State*, 227 S.W.3d 733, 737 (Tex. Crim. App. 2007) (holding that court of appeals properly declined to take judicial notice of exhibits that were not considered by trial court and were not part of appellate record.).

We conclude that, on this record, appellant has failed to demonstrate deficient performance on the part of her trial counsel.[9]  Thus, she has failed to establish ineffective assistance of counsel.  We overrule appellant's third point of error.

**Admission of Evidence**

During trial, appellant filed a brief explaining why, in her opinion, the medical records relating to the hospital's lab testing, which reflected the alcohol level in her blood at the hospital immediately after the collision, were "not reliable" and, therefore, were not admissible under the business records hearsay exception.  For reasons unclear from the record, the State acquiesced to appellant's attempt to exclude the medical records and "compromise[d]" by offering only one page of appellant's medical records, State's Exhibit #10, because it did not reflect the lab results.  The exhibit, which appears to be a discharge summary, reflected that the attending physician who treated appellant consulted a licensed chemical dependency counselor "due to [appellant's] intoxication."

---

[9]  Because appellant failed to meet her burden on the first prong of *Strickland* concerning deficient performance, we need not consider the requirements of the second prejudice prong. *See Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

When the State offered the exhibit during Trooper Escamilla's testimony, appellant objected, noting that the record was authored on June 22, 2012, five days after the collision, and complained, "When it's dated and there's no specificity that's relating to the incident, so it's not relevant." After some discussion with the parties, the trial court indicated, "If you both agree that it's clear from the medical records that — if you look at all of the medical records together, that this is the doctor's notes, then I think they're admissible," and stated, "The doctor diagnosed her as being intoxicated at the time she treated her no doubt." On questioning from the court, appellant agreed that the excerpt was from the doctor's notes. The trial court implicitly overruled appellant's relevancy objection by admitting the exhibit. In her fourth point of error, appellant contends that the trial court erred by admitting State's Exhibit #10 over her relevancy objection.

We review a trial court's evidentiary ruling for an abuse of discretion. *Jenkins*, 493 S.W.3d at 607; *see Dabney v. State*, 492 S.W.3d 309, 316 (Tex. Crim. App. 2016) ("[B]ecause trial courts are in the best position to decide admissibility questions, appellate courts must review a trial court's decision under an abuse-of-discretion standard."). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting

27

*Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Henley*, 493 S.W.3d at 83; *see* Tex. R. Evid. 401. To be relevant, evidence must be both material and probative. *Henley*, 493 S.W.3d at 83; *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). Evidence is material if it is "shown to be addressed to the proof of a material proposition," which is "any fact that is of consequence to the determination of the action." *Henley*, 493 S.W.3d at 83 (quoting *Miller*, 36 S.W.3d at 507). Evidence is probative if it tends to make the existence of the fact more or less probable than it would be without the evidence. *Henley*, 493 S.W.3d at 83–84; *Miller*, 36 S.W.3d at 507. Thus, "proffered evidence is relevant if it has been shown to be material to a fact in issue and if it makes that fact more probable than it would be without the evidence." *Miller*, 36 S.W.3d at 507; *accord Henley*, 493 S.W.3d at 83–84.

"Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004); *accord Mendiola v. State*, 21 S.W.3d 282, 284 (Tex. Crim. App. 2000). "'[E]vidence merely tending to affect the probability of the truth or falsity of a fact in issue is logically relevant.'" *Mendiola*, 21 S.W.3d at 284 (quoting *Montgomery*, 810 S.W.2d at 376). Even "marginally probative" evidence should be admitted if "it has any tendency at all, even potentially, to make a fact of consequence more or less likely." *Fuller v. State*, 829 S.W.2d 191, 198 (Tex. Crim. App. 1992), *overruled on other*

*grounds by Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995); *see Pina v. State*, No. 03-17-00129-CR, 2018 WL 1547272, at *4 (Tex. App.—Austin Mar. 30, 2018, no pet.) (mem. op., not designated for publication).

"There is no purely legal test to determine whether evidence will tend to prove or disprove a proposition—it is a test of logic and common sense." *Miller*, 36 S.W.3d at 507; *accord Pina*, 2018 WL 1547272, at *4. "Relevancy is not an inherent characteristic of any item of evidence but exists as a relation between an item of evidence and a matter properly provable in the case." *Henley*, 493 S.W.3d at 84 (quoting *Montgomery,* 810 S.W.2d at 375). Relevancy is determined by whether "a reasonable person, with some experience in the real world, [would] believe that the particular piece of evidence is helpful in determining the truth or falsity" of any fact of consequence. *Montgomery*, 810 S.W.2d at 376 (internal quotations omitted); *accord Pina*, 2018 WL 1547272, at *4.

The ultimate issue in this case was whether appellant recklessly caused Hand's death by the way she drove her Explorer. Trooper Escamilla testified that he smelled a "strong odor of an alcoholic beverage" when he made contact with appellant and that he subsequently discovered an open beer in her Explorer. The evidence also reflected that appellant admitted to the trooper that she had been drinking alcohol "all day," beginning at 12:30 p.m., while floating on the river and then drank more alcohol at the bar and grill before she began the drive that ended in the collision.

Trooper Escamilla expressed that, with alcohol consumption, people "lose their normal faculties" and "can't perform certain functions." Specifically, with regard to driving, the trooper opined that alcohol consumption makes it more difficult for a person to maintain control of a vehicle, stay in the lane of travel, and operate a vehicle around a curve. In addition,

29

the medical examiner, who conducted a toxicology screen on Hand as part of the autopsy, explained that

> any amount of alcohol taken into the body can affect your reflex time, your nervous system. So if you -- if you drink an – let's say a beer or a glass of wine, and then you're subjected to neurologic testing, you will show some impairment. At lower levels like [those reflected in Hand's toxicology screen] there won't be much impairment at all, but as you get higher up, there is significant impairment even if you don't outwardly look intoxicated.

Thus, the evidence—and reasonable inferences from it—indicates that alcohol may have been a factor in appellant's driving that night. *See Buie v. State*, No. 03-02-00280-CR, 2003 WL 21189757, at \*2 (Tex. App.—Austin May 22, 2003, no pet.) (mem. op., not designated for publication) (observing that "a person can be either reckless or intoxicated, both, or neither" (citing *Burke v. State,* 28 S.W.3d 545, 548–49 (Tex. Crim. App. 2000)); *see also Rubio v. State*, 203 S.W.3d 448, 452 (Tex. App.—El Paso 2006, pet. ref'd) (observing that "the actions of driving under the influence of alcohol can be used to show a conscious disregard of a substantial risk").

State's Exhibit #10, the discharge summary from appellant's hospital records, indicates that the doctor who treated appellant determined that appellant was intoxicated. While the fact that appellant had alcohol in her system was not conclusive proof that appellant drove recklessly, the indications of intoxication—or simply alcohol consumption—"were pieces in the evidentiary puzzle for the jury to consider" in determining whether appellant had recklessly caused Hand's death by the way she drove. *See, e.g.*, *Stewart*, 129 S.W.3d at 96–97 (concluding that even though intoxilyzer breath test results were not "conclusive proof" that appellant was intoxicated at time she drove, test results were relevant evidence as they were "pieces in the

30

evidentiary puzzle for the jury to consider"); *San German-Reyes v. State*, No. 03-15-00432-CR, 2017 WL 2229873, at *7–8 (Tex. App.—Austin May 17, 2017, no pet.) (mem. op., not designated for publication) (concluding that, while results of sexual assault exam were not conclusive proof that child victim had been sexually assaulted, doctor's testimony was relevant to witness credibility as well as investigative process). The fact that appellant had alcohol in her system or was intoxicated had a tendency to make it more probable that appellant's driving that night was reckless. *See Buie*, 2003 WL 21189757, at *2 (holding that State may allege reckless conduct based upon driver's consumption of alcohol). Thus, the evidence was relevant. Accordingly, we conclude that the trial court did not abuse its discretion in overruling appellant's relevance objection and admitting the exhibit. We overrule appellant's fourth point of error.

### Error in Written Judgment

In considering appellant's motion for rehearing, we observe that the written judgment of conviction in this case contains non-reversible error. The judgment reflects that it was entered on September 20, 2017, when the record demonstrates that it was entered on September 21, 2017. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the trial court's written judgment of conviction to reflect that the "Date Judgment Entered" was September 21, 2017.

### CONCLUSION

Having concluded that the evidence is sufficient to support appellant's conviction for manslaughter, that the doctrine of invited error precludes appellant from complaining about the trial court's removal of the jury instruction for criminally negligent homicide, that appellant

31

failed to establish that trial counsel rendered ineffective assistance, and that the trial court did not abuse its discretion by admitting the excerpt from appellant's hospital records but having found non-reversible error in the written judgment, we modify the judgment and, as modified, affirm the trial court's judgment of conviction.

 

_____

Edward Smith, Justice

Before Justices Goodwin, Baker, and Smith

Modified and, as Modified, Affirmed on Motion for Rehearing

Filed:   September 20, 2019

Do Not Publish