# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00882-CR

**Christopher Lee Castro, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 453RD DISTRICT COURT OF HAYS COUNTY
### NO. CR-18-0381-C, THE HONORABLE DAVID JUNKIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Christopher Lee Castro of seven counts of indecency with a child by sexual contact and two counts of sexual assault of a child and sentenced him to twenty years' confinement on each count. The trial court, on the State's motion, ordered that the sentences for the seven counts of indecency with a child were to run concurrently with one another. The court also ordered that the sentences for the two counts of sexual assault of a child were to run concurrently, but consecutively to those for indecency with a child. In seven issues, Castro alleges that the trial court, in its charge to the jury, improperly commented on the weight of the evidence. Castro also asks that the Court correct a typographical error in the judgment for count II. We will modify the judgment to correct the error and affirm the trial court's judgments of conviction as modified.

**Jury-Charge Error**

Castro, in seven issues, challenges the trial court's inclusion of language in the jury charge identifying each count of indecency with a child by the relevant testimony of the complainant, M.C.[2] Castro contends that the language amounts to an improper comment by the trial court on the weight of the evidence, in violation of Article 36.14 of the Texas Code of Criminal Procedure.

"The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury-charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury-charge error). If the jury-charge error has not been properly preserved by an objection or request for instruction, *see* Tex. Code Crim. Proc. arts. 36.14, .15, as it was not here, reversal is required only upon a showing of

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, .4.

[2] For example, the first sentence of count I provides, "This count refers to the testimony by M.C. regarding breast touching in the small house."
Because the complainant is a minor, we will refer to her by her initials in the interest of privacy. *See id*. 9.10(a)(3).

"egregious harm," "which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial," *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). Appellant must have suffered actual, and not merely theoretical, harm. *Id*.

Article 36.14, in relevant part, forbids the trial judge from delivering to the jury a written charge "expressing any opinion as to the weight of the evidence, summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex. Code Crim. Proc. art. 36.14. The primary reason for the Article is to prevent instructions that reduce the State's burden of proving guilt beyond a reasonable doubt to the jury's satisfaction. *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003) (citing 43 Dix & Dawson, *Texas Practice Series: Criminal Practice and Procedure* § 36.36 (2d ed. 2001)).

It is axiomatic that a trial judge may not single out certain testimony and comment on it. *Russell v. State*, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988). Nor may the judge, through the charge, suggest that certain evidence is true or untrue or instruct the jury on the weight to be given certain testimony. *Id*.; *see Brown*, 122 S.W.3d at 801 (noting that instruction could violate Article 36.14 "less obviously" by singling out evidence and "inviting the jury to pay particular attention to it"). Similarly, a charge that assumes the truth of a controverted issue is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986). Judges should, "as a general rule," avoid including non-statutory instructions in their charges because "such instructions frequently constitute impermissible comments on the weight of the evidence." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019).

However, there are "circumstances in which the judge must call the jury's attention to certain evidence in order to accomplish other, equally important objectives of the

3

law." *Atkinson v. State*, 923 S.W.2d 21, 24 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002). The Texas Court of Criminal Appeals ("CCA") has recognized three circumstances under which "a trial court may single out a particular item of evidence in the jury instruction without signaling to the jury an impermissible view of the weight (or lack thereof) of that evidence":

> (1) the trial court may specifically instruct the jury when the law directs it to attach "a certain degree of weight," or only a particular or limited significance, to a specific category or item of evidence; (2) the Legislature has expressly required the trial court to call particular attention to specific evidence in the jury charge when the law specifically identifies it as a predicate fact from which a jury may presume the existence of an ultimate or elemental fact; or (3) the trial court may instruct the jury with respect to evidence that is admissible contingent upon certain predicate facts that it is up to the jury to decide.

*See Bartlett v. State*, 270 S.W.3d 147, 151 (Tex. Crim. App. 2008). An instruction that singles out a particular piece of evidence, but does not serve one of these purposes, "risks impinging upon the independence of the jury in its role as trier of the facts, a role long regarded by Texans as essential to the preservation of their liberties." *Id*. at 151–52. Even a "seemingly neutral instruction" that singles out a particular piece of evidence for "special attention" may constitute an impermissible comment on the weight of the evidence. *Id*. at 152; *see Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) ("An instruction, albeit facially neutral and legally accurate, may nevertheless constitute an improper comment on the weight of the evidence."). "In determining whether an instruction is a comment on the weight of the evidence, we must consider the court's charge as a whole." *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App.—Dallas 2007, pet. ref'd).

*Invited Error*

The State asserts that to the extent the inclusion of the challenged language was error, Castro is estopped from bringing the issue on appeal under the doctrine of invited error. *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) ("The doctrine of invited error is properly thought of, not as a species of waiver, but as estoppel."). "The law of invited error provides that a party cannot take advantage of an error that it invited or caused." *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011); *see Willeford v. State*, 72 S.W.3d 820, 823 (Tex. App.—Fort Worth 2002, pet. ref'd) ("The court of criminal appeals has applied invited error when the defendant 'invites' the trial court to do something, the trial court does the act, and thereafter the defendant complains of the trial court's action.").

Specifically, the CCA has held that a defendant "may not complain of a charge that he requested." *Trejo v. State*, 280 S.W.3d 258, 260 (Tex. Crim. App. 2009) (citing *Tucker v. State*, 771 S.W.2d 523, 534 (Tex. Crim. App. 1988)); *see Vega v. State*, 394 S.W.3d 514, 520 n.21 (Tex. Crim. App. 2013) ("[T]he State cannot point to any part of the record showing that the instruction given was requested and neither can we. Under these circumstances, we will not assume appellant got the 'exact jury instruction [that] he had requested' and is now trying to 'benefit from an error that was committed at his behest.'"); *Trejo*, 280 S.W.3d at 260 ("[T]he mere absence of a showing of responsibility for the inclusion of the charge on the lesser offense does not give rise to estoppel . . . . The record does not show that the appellant requested the lesser-included-offense charge.").

A mere failure to object, however, does not invite error. *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (defendant's statement of "no objection" to erroneous jury charge "shall be deemed equivalent to a failure to object" and defendant "may raise such

unobjected-to [jury] charge error on appeal, but may not obtain a reversal for such error unless it resulted in egregious harm"); *Tyson v. State*, 172 S.W.3d 172, 177 & n.2 (Tex. App.—Fort Worth 2005, pet. ref'd) (stating that party did not invite error to jury charge by stating, "[W]e believe it's charged properly"). *But see Woodard v. State*, 322 S.W.3d 648, 659 (Tex. Crim. App. 2010) (holding appellant had invited error where he "had some responsibility for the jury instruction" and "helped prepare the charge, including the [challenged] instruction," which is "a great deal more than just simply not objecting to the charge or just stating 'no objection' to the charge").

Here, Castro exercised his right to require the State to elect which acts it was relying upon for each count. At trial, the following colloquy occurred outside the presence of the jury:

> THE STATE: [T]his is what I have been talking about the whole week in regard to election. This is why we indict cases this way because we can't prove a certain date. That's why the jury charge has those dates. What we can do, they can force us to elect . . . . These are things that, yes, they can elect and we can say those things. We have to put them in the jury charge, you have to find this incident or this incident. And we have to, of course, word that where it's not, you know, this is what the Judge thinks. Of course, we will say, this refers to this incident.
>
> . . .
>
> Now that's strategic, whether he wants us to elect these, then we are bound by only these and we can come back later potentially if there was [sic] other charges, or if he doesn't want us to elect, then that means we are jeopardy-barred completely from ever trying anything in this time frame again but that was a strategic decision on our part.
>
> THE DEFENSE: Your Honor, again, I'm not arguing about the dates. I'm arguing about what came from [M.C.'s] mouth. What came from [M.C.'s] mouth was at most five [counts]. Everything else is the State trying to supplement what she said.
>
> . . .

6

THE COURT: With respect to the rest of [the counts], as you walked down the list a moment ago and if we need to do that again, we can. My memory is there was testimony on all of those, to some [ex]tent.

THE DEFENSE: Very well, your Honor.

THE STATE: So just to be clear, are we asking for an election then to separate these counts? Is that what they are asking us to do[?]

THE COURT: If that is an election the defense needs to make, then I do think you need to make it. As I read the charge, again, those are identical but I suspect you are going to say, to say this is what happened on one – but, it's not in the instructions, right? So, it's –

THE STATE: Well, the issue I have with that, Judge, it wouldn't be unless they elect.

. . .

THE STATE: If they choose to elect, that would be in the jury charge as to which specific portions of testimony we are referring to with each count, should they make an election.

THE COURT: That's the defense election to make.

THE DEFENSE: I so make that election.

Castro's exercise of his right to compel the State's election was not invited error. After the State rests its case-in-chief, "the trial court *must* . . . order the State to make its election" "in the face of a timely request by the defendant." *O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988). We have previously explained that "[b]ecause it was created to afford defendants adequate notice and an opportunity to defend, the election requirement triggers fundamental constitutional due process principles." *Gutierrez v. State*, 8 S.W.3d 739, 747 (Tex. App.—Austin 1999, no pet.), *abrogation on other grounds recognized by Palmer v. State*, No. PD-1746-04, 2006 WL 2846864, *1 (Tex. Crim. App. Oct. 4, 2006); *see Phillips v. State*, 130 S.W.3d 343, 351 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904 (Tex.

Crim. App. 2006) ("[T]he Austin Court of Appeals, in *Gutierrez v. State*, held that the right to require the State to elect is constitutional in nature."). In consideration of the important constitutional protections and safeguards at stake, when a defendant exercises his right to election and the trial court subsequently errs in the language used in its charge to the jury, the defendant has not invited the error and is not estopped from challenging the erroneous instruction on appeal. Likewise, Castro's failure to object to the charge is insufficient to estop him from raising the present issues. *See Bluitt*, 137 S.W.3d at 53.

### *Comment on the Weight of the Evidence*

Castro contends that the trial court erred by including in the charge election language relating each count to the relevant portion of M.C.'s testimony. He maintains that such language was an improper comment on the weight of the evidence in violation of Article 36.14. In support of his contention, Castro notes that election language does not fall into one of the exceptions set forth in *Bartlett*, 270 S.W.3d at 151. In addition, he emphasizes the Court of Criminal Appeals' conclusion that even a facially neutral instruction attempting to provide clarity for the jury may constitute an impermissible comment on the weight of the evidence by singling out a piece of evidence that the jury "may then focus on as guidance from the judge." *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000). The State counters that the inclusion of referent language in the charge is necessitated by the act of election itself, to ensure jury unanimity. The State also stresses that the charge does not include an opinion as to the reliability or credibility of M.C.'s testimony.

Although election language does not fall within the categories enumerated in *Bartlett*, it is consistent with the Court of Criminal Appeals' objectives in demarcating the

exceptions. While the Court of Criminal Appeals has interpreted Article 36.14 to forbid discussion of evidence by the trial judge "which might suggest to the jury the judge's personal estimation of the strength or credibility of such evidence or which might tend to emphasize such evidence by repetition or recapitulation," it has nevertheless accepted that there will be situations where such a risk is unavoidable, namely, where a desire to preserve the State's burden from undue influence must be balanced against an "equally important objective[] of the law." *Atkinson*, 923 S.W.2d at 24.

Ensuring jury unanimity is one such objective. The Texas Constitution requires a unanimous verdict in felony criminal cases. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. art. 36.29(a). Unanimity in this context means "each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo*, 175 S.W.3d at 745. A unanimous jury verdict "ensures that the jury agrees on the factual elements underlying an offense," requiring "more than mere agreement on a violation of a statute." *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000). "A non-unanimous verdict can occur when the State charges one offense and presents evidence that the defendant committed that offense on multiple separate occasions." *De la Cruz Torres v. State*, 570 S.W.3d 874, 880 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Thus, one of the purposes of requiring an election is "to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred[.]" *Phillips*, 130 S.W.3d at 349.

Our sister courts have come to differing conclusions in conducting the balancing test advanced in *Atkinson*, and the Court of Criminal Appeals has yet to decide the matter. *See Gonzales v. State*, No. 05-18-00895-CR, 2019 WL 3059878, at *5 (Tex. App.—Dallas July 12, 2019, pet. ref'd) (mem. op., not designated for publication) (holding omission of "if any"

9

modifier in election instruction did not constitute error where remainder of charge explained State's burden of proof and did not suggest offense had "necessarily occurred"); *Newsome v. State*, No. 11-09-00222-CR, 2012 WL 4458176, at *4 (Tex. App.—Eastland Sept. 27, 2012, no pet.) (mem. op., not designated for publication) ("We do not suggest, however, that the trial court must include evidentiary references in the application paragraphs in the charge in order to instruct the jury that it must reach a unanimous verdict as to the specific act."); *Ortiz v. State*, No. 11-10-00303-CR, 2012 WL 760804, at *2 (Tex. App.—Eastland Mar. 8, 2012, pet. ref'd) (mem. op., not designated for publication) (holding instruction using modifiers "alleged," "allegedly," and "if any" was not comment on weight of evidence because it did not suggest State's version of events "must be true," and, in absence of instruction, jury could have non-unanimously convicted defendant); *Anderson v. State*, No. 10-09-00306-CR, 2010 WL 4140317, at *1 (Tex. App.—Waco Oct. 20, 2010, pet. ref'd) (mem. op., not designated for publication) (holding charge did not "assume the truth of a *controverted* issue" where it used modifiers "alleged," "allegedly," and "if any"); *Bonner v. State*, No. 10-09-00120-CR, 2010 WL 3503858, at *10 n.6 (Tex. App.—Waco Sept. 8, 2010, pet. ref'd) (mem. op., not designated for publication) ("In other paragraphs, however, the language used was qualified by referring to occurrences a particular witness had 'testified' about.").

Both Castro and the State cite *Vickery v. State* in support of their contentions. Nos. 02-04-00422—00423-CR, 2005 WL 2244730, at *6 (Tex. App.—Fort Worth 2005, pet. ref'd) (mem. op., not designated for publication). In *Vickery*, the Second Court of Appeals held that the following election language was not a comment on the weight of the evidence:

> The State has elected to proceed on the conduct described by [J.D.T.] as the first
> time the defendant is alleged to have touched the genitals of [J.D.T.] by grabbing

10

them with his hand occurring while [J.D.T.] resided at the residence on Jet Street and was 8 or 9 years of age.[3]

*Id*. at *2. The court explained that "[t]he first part of the sentence indicates that the State has chosen a particular line of conduct that it will rely upon for conviction. The second part of the sentence describes the conduct the State has chosen to proceed upon."

Here, the State stresses the *Vickery* court's reasoning that the first part of the instruction in that case "inevitably leads one" to conclude that the complainant testified about conduct that may or may not have occurred between the defendant and himself and that the jury's decision whether to believe the testimony "does not negate the fact that he did indeed testify about some conduct." *Id*. at *6. Castro in turn points to the court's emphasis on the instruction's use of the word "alleged" as a modifier of the conduct. *See id*. How much importance the court placed on each part of its analysis is unclear.

With respect to the charge in Castro's case, the application portion for each count of indecency with a child began with the qualifying formula: "This count refers to the testimony of M.C. regarding" or "in regards to." We conclude that the trial court's formulation was error. By explicitly and repeatedly referring to the testimony of the complainant—the sole witness to testify about the facts underlying the charges—the court influenced the State's burden and engaged in the very conduct proscribed by Article 36.14. However, although we find that the inclusion of the election language constitutes error, we conclude that Castro was not egregiously harmed by its presence.

---

[3] The court also considered an instruction in a second cause number identical in structure to the language quoted above.

As discussed above, if we find that error exists, we must analyze the error for harm. *Arteaga*, 521 S.W.3d at 333. Because Castro did not properly preserve his complaint by objecting at trial, a reversal will be granted only if the error caused "egregious harm." *See Chambers*, 580 S.W.3d at 154. Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) ("[Egregious harm] is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial."). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Villarreal*, 453 S.W.3d at 433; *see Marshall*, 479 S.W.3d at 843 ("[C]ourts are required to examine the relevant portions of the entire record to determine whether appellant suffered actual harm, as opposed to theoretical harm, as a result of the error."); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) ("An egregious harm determination must be based on a finding of actual rather than theoretical harm.").

In examining the record to determine whether jury-charge error has resulted in egregious harm, we consider: (1) the entirety of the jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d

12

at 171. The analysis is "fact specific and is done on a 'case-by-case basis.'" *Arrington*, 451 S.W.3d at 840 (quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

### *Entirety of the Jury Charge*

The remainder of the charge in the present case supports a conclusion that the challenged language was not an improper comment on the weight of the evidence. The charge instructed the jury at length about the State's burden of proof: "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt"; "[u]nless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case, the presumption of innocence alone is sufficient to acquit the defendant"; "[t]he State must prove every element of the offense beyond a reasonable doubt to establish guilt for each offense"; "[t]he state must prove, beyond a reasonable doubt, the accusations of Sexual Assault of a Child and Indecency with a Child." The charge also instructed jurors that evidence consists of "the testimony and exhibits admitted in the trial" and that they "must consider only the evidence to reach [their] decision." Moreover, it expressly clarified that "[n]othing the judge has said or done" should be considered by jurors "as an opinion about the facts of this case or influence [them] to vote one way or the other." The jurors were instructed that they alone "review the evidence," "determine the facts and what they prove," and "judge the believability of the witnesses and what weight to give their testimony." Consequently, the first factor weighs against a finding that Castro was egregiously harmed.

### *State of the Evidence*

The second factor requires us to review the state of the evidence, including the contested issues and weight of probative evidence. *Villarreal*, 453 S.W.3d at 433. Under this

13

factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington*, 451 S.W.3d at 841. M.C.'s testimony was the primary evidence against Castro at trial. She testified at length and in detail about her family history, relationship with Castro, and a number of inappropriate sexual contacts that occurred between the two.

The remainder of the State's witnesses largely bolstered or corroborated portions of M.C.'s testimony. M.C.'s mother, Ana Maria Dimas, testified that since coming to live with her, M.C. had been lethargic, antisocial, and unwilling to leave the house. Dimas also testified that when she and M.C. called Castro after M.C.'s initial outcry, Castro told her, "[T]hat's not the way it happened and [she] was just listening to [M.C.'s] side of the story."

Vanessa Paulini, a former forensic interviewer, testified about the frequency of delayed outcries. Although she clarified that she does not determine whether a child's allegations are true, she testified that abuse had only been made up in two of her 1,840 interviews.

Sgt. Mike Andrews with the Hays County Sheriff's Office testified about his interview of Castro. Andrews testified that he considered "elements" in Castro's denial of the allegations to be "red flags." According to Andrews, instead of unqualifiedly repudiating the allegations, Castro equivocated, responding, "I can't remember any of those times happening"; "I'm going to say, no"; "[f]rom the questions I was asked, no." Andrews also thought it was "odd" that, though the interview concerned M.C.'s allegations, "all [Castro] wanted to really talk about was getting [M.C.'s younger sister] back." On cross-examination, Andrews acknowledged that his investigation had been limited to interviewing Castro and watching M.C.'s forensic interview.

14

Finally, Ashley Rios, Program Director at Roxanne's House, testified as an expert about delayed outcries, the psychological effects of abuse, and false allegations. Rios testified that delayed outcries are "very common" and that the closer the relationship between the offender and victim, the longer the disclosure takes. With respect to false allegations, Rios explained that "the majority of the time research shows that children do not make false allegations of child sexual abuse. That percentage of false allegations is very small."

Given the centrality of M.C.'s testimony to the State's evidence and the emphasis both sides placed on her credibility, the second factor weighs in favor of a finding that Castro was egregiously harmed. M.C.'s reliability as a witness was the predominant issue at trial; in view of the evidence, a charge that singled out the portions of her testimony alleging inappropriate sexual acts was more likely to harm Castro.

### *Arguments of Counsel*

Under the third *Almanza* factor, we consider whether any statements made during the trial by the prosecutor, defense counsel, or trial court may have exacerbated or ameliorated the error in the jury charge. *Id*. at 844. Both sides concentrated on the nature and significance of testimonial evidence during opening arguments. The State, explaining that "testimony is evidence" and that it did not expect to have physical evidence in the case, cautioned jurors, "It's going to be up to you to keep an open mind and think about, is this enough? Do we believe the people that are coming in and testifying?" "The only person that saw what happened between [M.C.] and Christopher," the State continued, "[are] [M.C.] and Christopher. So, that's an issue in this case. There [are] no other witnesses to this conduct, just [M.C.]" The defense likewise

15

stated that the case was about "[w]ords, the impact of those words, and the absence of words. Because in the end, that is all you are going to hear."

In its closing argument, the State once more emphasized the significance of M.C.'s testimony, expressly referencing the election language in the charge:

> This jury charge you have are the words you need in the case. That's the law. That's all you get. So, if you want another explanation on something, we can't give that. This is the law . . . . You heard [M.C.] She can't tell you on Saturday, September 5, this happened but she can talk about specific instances.

The State then reviewed the seven counts of indecency with a child, noting that for each one, "the very first sentence tells you what the count is related to." And later, the State again went through "each and every count and what part of [M.C.'s] testimony is applicable." The prosecutor added, "[W]ords do have meaning. They are powerful. They are evidence. They are testimony." Moreover, the State explicitly tied a potential verdict of "not guilty" to M.C.'s credibility as a witness, stating, "If you acquit, you are saying you do not believe her. That's the message. That is what you are saying, that what she said is not true and that it did not happen." However, the State also reminded the jury of its burden of proof in considering the testimony: "[T]hat one-witness rule, if you believe her and all those elements are proven, then guess what? That's it. That's it. If you believe her beyond a reasonable doubt, you convict."

At closing, defense counsel expounded on the defense's central themes of an inadequate investigation and the insufficiency of testimony alone. Counsel summarized his understanding of the State's argument: "Let me tell you what their narrative was and is and remains. [M.C.] made a statement. We believe it. It's true. You have heard nothing else. Are those facts I would argue, no, those are not facts." Counsel insisted he was not accusing M.C. of lying but merely illustrating that the State had not met its burden:

16

[T]he standard now is you make the allegation. You are guilty. Do you want that as a standard? I don't have to call [M.C.] a liar because I don't think it's relevant. What's relevant is did they prove it? Did they prove that my client did something? Did they do anything extra to find out if it was, true? No, every person along that line on law enforcement side said guilty, let's roll.

Counsel also challenged the number of incidents about which M.C. had testified:

The State may not be bound by dates but they are bound by what came out of the witnesses' mouth and I'll let you think about the testimony the way you think about it, but when I took my notes, I didn't hear [M.C.] testify about no [sic] nine different counts. I didn't hear that. But you took your notes and what you remember is what you remember.

The trial court, however, mitigated both sides' arguments with respect to M.C.'s testimony, its credibility, and its relation to the charge. When defense counsel objected to the State's characterization of a statement made by Castro, the trial court overruled the objection, reminding jurors to "remember the evidence." The court further admonished the jury, "Ladies and gentlemen, remember nothing that the lawyers say is evidence. You are the sole judges of any evidence that was given. You will remember what was or was not said."

Despite their emphasis on M.C.'s testimony during opening and closing arguments, both sides reminded the jury of its role as the trier of fact and judge of credibility, as well as of the State's burden of proof. Similarly, both framed the election language with respect to its relation to M.C.'s testimony, distinguishing it from the statements of law contained in the charge. Most significantly, the trial court during closing argument explicitly admonished the jury that the arguments of counsel were not evidence, that they were the "judges of any evidence," and that it was their responsibility to recall the evidence as they could. Accordingly, the third factor weighs at most slightly in favor of a finding that Castro was egregiously harmed.

17

*Other Relevant Information*

The fourth factor involves any other relevant information in the record. The statements made by both sides during voir dire weigh against a finding that Castro was egregiously harmed. Prosecutors spoke at length about the State's burden of proof and the jury's role as the trier of fact. The State advised the panel that "a juror's duty if you're in this box, is to determine facts, determine the credibility of the witnesses, make reasonable deductions and conclusions from the evidence." The State elaborated:

> That's kind of the linchpin, you have to believe [witnesses] beyond a reasonable doubt. Okay. So, like I have mentioned before, you just brought this up, jurors are the judges of the witnesses' credibility. It's completely up to you to decide as a jury to decide what you believe and how much of the testimony you believe of these witnesses.

The State also offered a nuanced explanation of the role of testimony, stating that "[w]hatever portion of it you believe as a juror, whatever amount you find credible, that is considered evidence." The defense similarly added, "I want 12 people that are going to listen to the evidence without a preconceived notion of [Castro] and listen to that evidence and, when it's time for you to vote on it, if you believe a certain way, believe that way." The fourth factor weighs against a finding that Castro was egregiously harmed by the election language.

From our analysis of the *Almanza* factors, we conclude that Castro was not egregiously harmed by the trial court's inclusion of the election language in its jury charge. We therefore overrule issues one through seven.

**Modification of the Judgment**

We have the authority to modify a trial court's judgments and affirm them as modified. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim.

18

App. 1993) (courts of appeals have authority to modify judgment). In his eighth issue, Castro correctly notes that the judgment form for count II erroneously provides "N/A" under "Findings on 1st Enhancement Paragraph." The verdict form for count II shows that the jury found the allegation of a prior conviction to have been proven "true." Accordingly, we sustain Castro's eighth issue and modify the judgment for count II to reflect that the jury made a finding of "true" on the first enhancement paragraph.

## CONCLUSION

Having overruled Castro's issues one through seven and sustained issue eight, we affirm the judgments of the trial court as modified.

_____
Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith
 Dissenting Opinion by Justice Triana

Modified and, as Modified, Affirmed

Filed:   December 30, 2021

Do Not Publish

19